## NATHAN A. RHOADS v. FIRST NATIONAL BANK OF CARRINGTON, NORTH DAKOTA, and G. S. Newberry.

(163 N. W. 1046.)

**Malicious prosecution — action for damages — attorney's lien — evidence of filing — admission of — prejudicial error.**

1. In an action for damages for malicious prosecution, it is prejudicial error to permit the defendant to introduce testimony concerning the filing of an attorney's lien for $2,500 by one Stillman, one of the plaintiff's attorneys, such testimony being incompetent, irrelevant, and not tending to prove any of the issues involved in the case, and manifestly tending to prejudice the jury.

**Statutes — "wilfully" — meaning of — personal property — lien upon — removal — destruction, concealment, or selling — by person knowing of lien — bad purpose — evil intent.**

2. Under § 10248, Compiled Laws of 1913, providing among other things, "Every person having in his possession or under his control any personal property upon which there is known to him to be a subsisting lien either by operation of law or by contract, who *wilfully* destroys, removes from the county, conceals, sells, or in any manner disposes of otherwise than as prescribed by law," it is *held* that the word "wilfully" means not only intentionally, but in criminal law also means with a bad purpose or evil intent.

---

Note.—On acquittal or discharge on a criminal charge as evidence of want of probable cause in an action for malicious prosecution, see notes in 64 L.R.A. 475 and 3 L.R.A.(N.S.) 929.

On advice of counsel as defense to action for malicious prosecution, see notes in 18 L.R.A.(N.S.) 49 and 39 L.R.A.(N.S.) 207.

On advice of counsel as defense in action for malicious prosecution, see note in 9 Am. St. Rep. 837.

Officers — committing magistrate — preliminary hearings — complaint in — indorsement of discharge on — mandatory — must be for reason assigned by statute.

    3. Section 10609, Compiled Laws of 1913, specifies what the committing magistrate shall indorse upon the complaint when the accused is discharged, which is as follows: "There being no sufficient cause to believe the within named ———— guilty of the offense within mentioned, I order him discharged." *Held* that a different record or discharge than that provided by law, which assigns a different reason for the discharge than that required by law to be indorsed on such complaint, is incompetent and inadmissible as evidence, especially where it assigns other reasons for the discharge of the defendant from custody than *insufficiency of cause* to believe the defendant guilty of the offense with which he is charged.

Opinion filed July 14, 1917.

Appeal from the District Court of Foster County, Honorable *J. A. Coffey,* Judge.

Reversed.

*Geo. H. Stillman* and *T. F. McCue,* for appellant.

Where plaintiff has shown a good and valid cause of action for malicious prosecution, his good faith or bad faith in instituting the action cannot be questioned. Pierce v. Pierce, 16 Cal. App. 375, 117 Pac. 580; McNamara v. McAllister, 150 Iowa, 243, 130 N. W. 26, Ann. Cas.1912D, 463; Flinn v. Frederickson, 89 Neb. 563, 131 N. W. 934; Pollitz v. Wabash R. Co. 150 App. Div. 715, 135 N. Y. Supp. 789; Ball v. Tolman, 119 Cal. 358, 51 Pac. 646.

Evidence, the only purpose of which is to prejudice the minds of the jury, should be excluded. McKay v. State, 90 Neb. 63, 39 L.R.A. (N.S.)714, 132 N. W. 741, Ann. Cas.1913B, 1034; Deitz v. Providence Washington Ins. Co. 33 W. Va. 526, 25 Am. St. Rep. 908, 11 S. E. 50.

There was no evidence to connect plaintiff with the removal of the property. Krol v. Plodick, 77 N. H. 557, 94 Atl. 261, Ann. Cas. 1916A, 1124.

Mere belief of defendant in plaintiff's guilt, however strong, sincere, or honest, will not constitute probable cause unless founded upon circumstances sufficient in reason to warrant it. Shaul v. Brown, 28 Iowa, 37, 4 Am. Rep. 151; Donnelly v. Burkett, 75 Iowa, 613, 34 N. W.

330; Spalding v. Lowe, 56 Mich. 366, 23 N. W. 46; Vansickle v. Brown, 68 Mo. 627; Eggett v. Allen, 119 Wis. 625, 96 N. W. 803.

The word "wilfully" in this statute, like every other criminal statute, means not merely a known voluntary removal, but a removal from the county of the property, with an evil, bad intent. Potter v. United States, 155 U. S. 438, 39 L. ed. 214, 15 Sup. Ct. Rep. 144; Galvin v. Gualala Mill Co., 3 Cal. Unrep. 869, 33 Pac. 94, 30 Am. & Eng. Enc. Law, 2d ed. 530 and cases cited; Brooks v. Bradford, 4 Colo. App. 410, 36 Pac. 303; Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574; Johnson v. Miller, 63 Iowa, 529, 50 Am. Rep. 758, 17 N. W. 34.

"An agreement to give plaintiff's attorney part of the recovery is valid, and defendant cannot offer evidence of such fact in evidence; nor can he so use an attorney's lien, if one is filed. It is prejudicial error to permit it." Sussdorff v. Schmidt, 55 N. Y. 319; King v. New York C. & H. R. R. Co. 72 N. Y. 607; Greenleaf v. Minneapolis, St. P. & S. Ste. M. R. Co. 30 N. D. 112, L.R.A.—, —, 151 N W. 879.

The general rule is that such contracts cannot be admitted in evidence. They are wholly immaterial to the issues, and tend not to prove any issue in the case, but rather to confuse and prejudice the jury. Burnes v. Scott, 117 U. S. 591, 29 L. ed. 994, 6 Sup. Ct. Rep. 865; Allison v. Chicago & N. W. R. Co. 42 Iowa, 280, 3 Am. Neg. Cas. 330; Sibley v. Alba, 95 Ala. 198, 10 So. 831; Small v. Chicago, R. I. & P. R. Co. 55 Iowa, 582, 8 N. W. 437; Chamberlain v. Grimes, 42 Neb. 701, 60 N. W. 948; Aultman v. Waddle, 40 Kan. 195, 19 Pac. 730; Gage v. DuPuy, 127 Ill. 216, 19 N. E. 878; Brinley v. Whiting, 5 Pick. 348; Courtright v. Burns, 2 McCrary, 60, 13 Fed. 317; Noble v. White, 103 Iowa, 352, 72 N. W. 556; Watson v. Watson, 53 Mich. 168, 51 Am. Rep. 111, 18 N. W. 605.

It is the duty of a committing magistrate after a full examination of the facts, if he believes the evidence fails to show that a public offense has been committed and that there is no probable cause to hold the defendant, to promptly discharge him, and to give or indorse his reason for such discharge on the complaint, as the statute requires. United States v. Lumsden, 1 Bond, 5, Fed. Cas. No. 15,641; People v. Evans, 72 Mich. 367, 40 N. W. 473.

A justice of the peace should enter judgment, or other findings, at

the close of the trial.    Comp. Laws 1913, § 9100; Harper v. Albee, 10 Iowa, 389.

The mere fact that one about to start criminal proceedings against another goes to the state's attorney or other proper officer and makes a full, fair statement of all the facts within his knowledge, is not enough. He must go further and investigate as to all the facts and circumstances he could have ascertained by the exercise of reasonable diligence.    Merchant v. Pielke, 10 N. D. 52, 84 N. W. 574; Schneider v. Shepherd, 192 Mich. 82, L.R.A.1916F, 399, 158 N. W. 182.

It was error for the court to omit to so instruct the jury.    Miller v. Chicago, M. & St. P. R. Co. 41 Fed. 898; Tucker v. Cannon, 28 Neb. 196, 44 N. W. 440; Manning v. Finn, 23 Neb. 511, 32 N. W. 314; Boyd v. Mendenhall, 53 Minn. 274, 55 N. W. 45.

"Malice" consists of a "wish" or "desire" to vex, annoy, or injure another person, or an intent to do a wrongful act to such person. Comp. Laws, 1913, § 10,360.

The omission of any material fact by design or otherwise will render the advice of counsel nugatory as a defense, and where there is a want of probable cause, advice of counsel is no defense.    Cooper v. Utterbach, 37 Md. 283; Block v. Meyers, 33 La. Ann. 776; Wuest v. American Tobacco Co. 10 S. D. 394, 73 N. W. 905.

In such relation the burden of proof was on defendants.    Davis v. McMillian, 142 Mich. 391, 3 L.R.A.(N.S.) 928, 113 Am. St. Rep. 585, 105 N. W. 862, 7 Ann. Cas. 854; Whitehead v. Jessup, 2 Colo. App. 76, 29 Pac. 916; Dreyfus v. Aul, 29 Neb. 191, 45 N. W. 282; Manning v. Finn, 23 Neb. 511, 37 N. W. 314; Roy v. Goings, 112 Ill. 656; Scrivani v. Dondero, 128 Cal. 31, 60 Pac. 463.

*Edward P. Kelly,* for respondents.

"Where an attorney proffers himself as a witness, voluntarily gives testimony in a case in which he admits having a contingent fee, he should be required to answer on cross-examination as to the amount of such fee."    New Omaha Thomson-Houston Electric Light Co. v. Johnson, 67 Neb. 393, 93 N. W. 778, 13 Am. Neg. Rep. 546.

"The admission of testimony which is incompetent as the case then stands, but which is afterwards made competent by the introduction of other evidence, is not ground for setting aside the verdict."    Eastman v. Amoskeag Mfg. Co. 44 N. H. 143, 82 Am. Dec. 201.

"The record of a court in which plaintiff was tried, showing his arrest, hearing, and acquittal, is admissible." 8 Enc. Ev. 418.

"If such record contained any matters not pertinent to the issues, the proper method of procedure would have been to object to its reading before the jury, or to ask that the jury be instructed to disregard it." Granger v. Warrington, 8 Ill. 299; Cooney v. Chase, 81 Mich. 203, 45 N. W. 833.

"That a verdict of acquittal was reached only after deliberation by a petit jury, and that such body entertained doubts about the evidence, is evidence in favor of the existence of probable cause for prosecution." Grant v. Deuel, 3 Rob. (La.) 17, 38 Am. Dec. 228.

And where the jury disagree it is prima facie evidence of probable cause. Johnson v. Miller, 63 Iowa, 529, 50 Am. Rep. 758, 17 N. W. 34; Sherwood v. Reed, 35 Conn. 450, 95 Am. Dec. 284.

Where a person gives to the prosecuting attorney a full and fair statement of all the facts within his knowledge, or of which he had reasonable grounds to believe existed, he is not required to make any fuller or greater investigation. Johnson v. Miller, 69 Iowa, 562, 58 Am. Rep. 231; Van Meter v. Bass, 40 Colo. 78, 18 L.R.A.(N.S.) 49, 90 Pac. 637.

"Harmless error in admitting incompetent evidence is not ground for reversal." Anderson v. First Nat. Bank, 6 N. D. 497, 72 N. W. 916.

Or where there is no reasonable probability that the result would have been different. Haugen v. Chicago, M. & St. P. R. Co. 3 S. D. 394, 53 N. W. 769.

Or where the judgment is clearly right. John A. Tollman Co. v. Bowerman, 5 S. D. 197, 58 N. W. 568; Hudson v. Archer, 9 S. D. 240, 68 N. W. 541; 1 Hill's Dig. p. 158; Numerous cases cited in Webster v. Webster, 66 Am. Dec. 711, note.

"Upon the undisputed facts the court should have found, as a matter of law, that the defendants had probable cause for bringing the criminal action." Krause v. Bishop, 18 S. D. 298, 100 N. W. 434; Kolka v. Jones, 6 N. D. 461, 66 Am. St. Rep. 615, 71 N. W. 558; Smith v. Nunich, 65 Minn. 256, 68 N. W. 19; Frowman v. Smith, 12 Am. Dec. 266, note; 2 Greenl. Ev. 456.

"Whether the proof of certain facts constituted probable cause is

a question of law, and it is error to submit such question to the jury." Traverse v. Smith, 1 Pa. St. 234, 44 Am. Dec. 125.

"It is well established that it is a good defense in an action for malicious prosecution that the defendant in such action, in good faith relied upon the advice of counsel in instituting criminal proceedings." Merchant v. Pielke, 10 N. D. 48, 84 N. W. 574; Krause v. Bishop, 18 S. D. 298, 100 N. W. 434; Van Meter v. Bass, supra.

GRACE, J. The action is one for damages for malicious prosecution. The complaint alleges the corporate character of the defendant under the National Bank Laws of the United States of America, and alleges that G. S. Newberry is cashier. That on or about the 6th day of November, 1914, the defendants maliciously and falsely conspired together with the intent to injure the plaintiff in his good name and credit, and wilfully and maliciously instructed the then sheriff of Foster county, North Dakota, to take steps to detain the plaintiff and deprive him of his liberty until the defendants could make a complaint and formal charge against him. Pursuant to said instructions the said sheriff of Foster county, North Dakota, through the sheriff of Plymouth county, Iowa, without warrant and authority in law, wantonly and maliciously and at the instigation of the defendants, apprehended the plaintiff and confined him in the county jail of said Plymouth county, Iowa, upon suspicion, and that plaintiff was so held and confined in the said county jail of Plymouth county, Iowa, on said false, unfounded, and malicious charge at the instance and instigation of the defendants from and including the 6th day of November, 1914, until and including the 10th day of November, 1914. That pursuant to said malicious and false conspiring together, the defendants appeared before one Robert R. Pryor, police magistrate of the city of Carrington, Foster county, North Dakota, and maliciously and falsely and without probable cause made complaint under oath before said magistrate, charging that plaintiff unlawfully, wilfully, and feloniously on or about the 1st day of November, 1914, removed from the county of Foster, North Dakota, certain chattels subject to a subsisting lien in the nature of a chattel mortgage known to plaintiff, to wit, a certain Velie automobile, well knowing such charge to be false, malicious, and unfounded, and maliciously and without probable cause procured said magistrate to

issue a warrant for the arrest of plaintiff upon the said false, malicious, and unfounded charge. That said magistrate on the 7th day of November, 1914, issued said warrant and placed the same in the hands of the sheriff of Foster county, North Dakota, who proceeded to Le Mars, Plymouth county, Iowa, therewith, and placed plaintiff under arrest thereunder, and removed said plaintiff from the said county jail of Plymouth county, Iowa, to the county jail of Foster county, North Dakota, on November 11, 1914. That plaintiff was confined and was deprived of his liberty, in the said county jail of Foster county, North Dakota, from and including the 11th day of November, 1914, until and including the 15th day of December, 1914. On the 15th day of December, 1914, plaintiff was examined before one S. J. Malen, a justice of the peace of Foster county, North Dakota, which justice found there was no probable cause to believe the defendant guilty of said crime or of any crime, and the plaintiff was discharged by said justice, since which time said plaintiff has not prosecuted said defendant further. Plaintiff further alleges that the said complaint and the allegations that plaintiff had committed a crime under the laws of the state of North Dakota, and against the peace and dignity of such state, are and were wholly false, untrue, and malicious, and were known to be false, untrue, and malicious by the defendants at the time said charge and complaint were preferred by them. That the said charge and arrest and confinement of the plaintiff in said county jails were extensively advertised in several newspapers in Foster county, and, as plaintiff is informed and believes, at the instance of defendants. Plaintiff further claims injury in person and health by reason of confinement in said said jails, and was prevented from attending to his business as auto liveryman, that he lost his business, and was put to large, excessive, and unusual expense in caring for his property, and many persons hearing of his arrest and detention in jail, and believing him therefrom to be a criminal, refused to do business with him.

The defendants' answer is in substance as follows: That the plaintiff did on or about the 1st day of November, 1914, commit the crime of unlawfully, wilfully, and feloniously removing from the county of Foster, state of North Dakota, a certain chattel, to wit, a Velie automobile upon which there was then a subsisting lien in the nature of a chattel mortgage. That the First National Bank of Carrington is a

banking corporation, and that G. S. Newberry is the qualified and acting cashier. That prior to the 1st day of November, 1914, the plaintiff and one G. C. Olsen were indebted to the First National Bank of Carrington and secured such indebtedness by the execution of their certain chattel mortgage covering, among other things, a certain Velie automobile. That such chattel mortgage was accepted by said defendants and placed on file in the office of the register of deeds of Foster county. That said indebtedness has not been paid, and that said indebtedness, together with the chattel mortgage aforesaid, was during all of the time alleged in plaintiff's complaint, and now, unpaid, unsatisfied, and in full force and effect, and that said chattel mortgage was during all of the time a subsisting lien upon the aforesaid described Velie automobile. That plaintiff herein on or about November 1, 1914, without the consent or knowledge of the defendant bank, or its cashier, took and removed the said Velie automobile, upon which there was a lien as aforesaid, from the county of Foster, and state of North Dakota; and that defendants were informed that the plaintiff was taking such automobile out of the state of North Dakota, to the state of Florida. That information was given to the defendants that the plaintiff, in company with another person, in possession of and driving a Velie automobile, being the Velie automobile covered by the mortgage aforesaid, were under arrest in the county of Plymouth and state of Iowa.

Defendants further allege that G. S. Newberry, as cashier of the First National Bank, called upon C. B. Craven, the qualified and acting state's attorney for the county of Foster and state of North Dakota, and stated to such state's attorney all the facts hereinbefore set forth, in good faith, and stated all the facts connected with said transaction to such state's attorney fully and fairly, and stated to such state's attorney all the facts, circumstances, and conduct of said plaintiff of which the defendants had been informed; and that thereupon said state's attorney informed said G. S. Newberry that there was sufficient ground for procuring a warrant causing the arrest of said plaintiff for the commission of the crime of removing property upon which there was a subsisting lien from the county of Foster, and state of North Dakota, being the county and state wherein said property was at the time of the execution of the said chattel mortgage or lien. That thereupon the said C. B. Craven, state's attorney as aforesaid,

prepared and drafted the criminal complaint upon which the warrant hereinbefore referred to was issued, and presented the same to the defendant G. S. Newberry for his signature, oath, and verification, and thereupon the criminal warrant for the arrest of the plaintiff, which is the same arrest that this plaintiff now complains of, was issued. The defendants further allege that, upon causing the arrest of the plaintiff herein, these defendants acted in good faith upon the advice and counsel of C. B. Craven, state's attorney, and that such arrest was caused in good faith, without malice, and in the honest belief that said plaintiff had committed the crime charged and alleged in the criminal complaint heretofore and in plaintiff's complaint referred to and described; and further allege that the above acts are the same of which plaintiff now complains. Defendants for a further defense, both as in justification and mitigation, reallege all and singly the matters hereinbefore stated, and further allege that all of the acts of these defendants in reference to the criminal complaint herein, the warrant, and arrest, as set forth in and complained of by the plaintiff in his complaint, were performed by these defendants in good faith and without malice, and believing that the plaintiff was guilty of the crime and offense set forth and charged in the criminal complaint referred to and described in the plaintiff's complaint herein.

The facts in the case appear to be substantially as follows: The appellant and one G. C. Olson were engaged in the business of running an automobile garage during the year of 1914, at Carrington. They purchased the garage from W. B. Hoopes for $1,315, giving their promissory notes for the purchase price. The First National Bank of Carrington became the owner by indorsement from Hoopes of the promissory notes given by appellant and his partner for such purchase price. On or about the 10th day of August, 1914, the First National Bank took a chattel mortgage from the appellant and his partner to secure such indebtedness, which chattel mortgage covered and described three automobiles, as follows: A model C Velie, 30 h. p.; one model F Velie, 40 h. p.; and one Rambler touring car; and in addition to these certain tools, appliances, and repairs in the gargage. G. C. Olson, appellant's partner, took care of the business of the partnership, and the appellant was the mechanic. In the month of September, 1914, Olson, together with G. S. Newberry, sold the garage and everything

in connection with it, except the three automobiles above referred to. At this time the indebtedness of the copartnership which was secured by the chattel mortgage on the three automobiles was reduced to the sum of $40.60. The Velie car was worth about $275; the Rambler car, about $150; and the Velie 40, about $450; and all remained and stood as security for the balance of the indebtedness owing to the First National Bank, which was $40.60. During the time the appellant and his partner ran the garage, they did quite an extensive automobile livery business, using the cars mentioned in the chattel mortgage for the purpose of carrying on their business and driving wherever their business required. After the garage was closed, G. C. Olson took the automobile, Velie 40, to Medina, in the state of North Dakota, the Rambler car, of the value of $150 stood in the garage across the street from the First National Bank of Carrington. The latter part of October, 1914, the appellant made an arrangement whereby he was to take one Malloy from Carrington to St. Louis, Missouri, at the agreed price of $10 a day and expenses on the trip. For the purpose of making such trip he took the Velie car, model C 30 h. p., which was owned by Olson and himself in partnership, and drove from Carrington to Oberon in this state, from there to Minnewaukon, from there to Devils Lake, and from there to Fargo, stopping at the hotels and registering at all times under his own name. From Fargo he went to Minnesota and stopped at several towns in Minnesota, registering in his own name and making no attempt to cover up his identity. He had no trouble until he arrived at Remsen, Plymouth county, Iowa, where it seemed that the night previous to his coming to Plymouth county, some automobiles had been stolen, and the appellant and his passenger were suspicioned by the authorities, and were detained under suspicion and brought to Le Mars, the county seat of Plymouth county, Iowa. When the appellant was first detained he was told by the sheriff of Plymouth county that he was detained for running an automobile with only one license tag. The appellant advised the sheriff of Plymouth county, Iowa, that he could call up Carringon and identify him, and gave the sheriff of Plymouth county the name of the chief of police of Carrington and the name of the sheriff of Foster county, North Dakota. He also told the sheriff at Le Mars that the First National Bank at Carrington at one time had a mortgage upon the car, and

they could identify the car. No answer was received to the message. Later the appellant caused the sheriff of Plymouth county, Iowa, to communicate with the sheriff of Foster county, North Dakota, over the long-distance telephone. The sheriff of Foster county, after hearing from the sheriff of Le Mars, Iowa, took the matter up with the defendant, the First National Bank. The First National Bank of Carrington instructed the sheriff at Le Mars, Iowa, to hold the appellant, for the reason that he was wanted in Carrington for unlawfully removing from the county and state an automobile covered by a mortgage. Shortly thereafter Newberry swore to a criminal complaint, charging the appellant with the crime of wilfully removing property covered by a mortgage from the county of Foster, and on the 7th day of November a warrant was issued for the arrest of the appellant. After the sheriff of Foster county had received such warrant he went from Carrington to Le Mars, Iowa, and brought back the appellant to Carrington and placed him in the county jail, where he remained for some time. On the 15th day of December the appellant had a preliminary hearing before S. J. Malen, a justice of the peace in Carrington, and was discharged by such justice of the peace, and the criminal proceedings ended.

It seems from the testimony that the justice of the peace did not write up his docket until some time after such preliminary hearing, and in such docket, written up after the preliminary hearing some days, the said justice set forth the following: "After hearing the testimony for the state and the defendant N. A. Rhoads, and hearing the arguments of T. F. McCue, Esq., for defendant and C. B. Craven, Esq., for the state, it is the opinion of this court that probable cause to hold the defendant N. A. Rhoads to district court exists, but for the reason that he has already been confined in the county jail for about a month awaiting a preliminary hearing and being unable to furnish any bond for his appearance in district court, I am unwilling to order the defendant confined in the county jail for five months more to await trial at the first regular term of district court, which convenes in May, 1915. For the above reasons the defendant N. A. Rhoads is hereby discharged."

Either of the automobiles described in the chattel mortgage was sufficient in value to satisfy the balance of the indebtedness which

was due respondent, to wit, $40.60. The respondent in his brief con-cedes this fact. Before consulting the state's attorney, Newberry had also consulted with the private counsel of the bank, and claims to have communicated to him all of the facts of which he had knowledge, and was advised by such private counsel that it was his duty or business to confer with Mr. Craven, the state's attorney of Foster county, and to act upon Mr. Craven's advice.

The appellant has made several assignments of error; but, for the purpose of disposing of this appeal, we find no necessity to consider more than two of them.

The first assignment of error relates to the admission of testimony concerning evidence of the notice of attorney's lien for $2,500, such notice of a lien being served by Attorney Stillman, who appeared as one of the attorneys for the plaintiff in this action. All such testimony was incompetent, irrelevant and immaterial, and had no relation whatever to any issue involved in the case. The question of the good faith of the attorneys and the plaintiff in bringing this action is not an issue, and any testimony admitted with reference thereto is incompetent, irrelevant, immaterial, and prejudicial. If plaintiff believed he had a cause of action against the defendant, he had a perfect right to employ attorneys to prosecute such action, and had a further right to make a contract to pay them for their services, either a stated sum or a contingent fee. The further testimony complained of under this assignment of error is the admission of testimony received under objection from Newberry regarding a check of W. A. Malloy, about which the Bank of Oberon phoned to the First National Bank of Carrington, upon which bank the check was drawn, the First National Bank of Carrington replying to the Bank at Oberon, stating that Malloy's check was no good. Such testimony could have no relation to the issues in this case. It was highly incompetent, irrelevant, immaterial, and prejudicial. The objection to all of such testimony should have been sustained, and it was reversible error not to sustain the objection to such immaterial and prejudicial testimony.

The second error to which we allude, being error assigned as number 3, relates to the admitting in evidence of "exhibit 5," being the record of S. J. Malen, Justice of the Peace, before whom the preliminary hearing was had, at which preliminary hearing the defendant,

who is the plaintiff in the case at bar, was discharged. Section 10,609 of the Compiled Laws of 1913 specifies what a committing magistrate shall *record or find upon the termination of the preliminary hearing,* where defendant is discharged and is as follows:

"Procedure. Accused Discharged.—After hearing the evidence on behalf of the respective parties, if it appears either that a public offense has not been committed, or that there is no sufficient cause to believe the defendant guilty thereof, the magistrate must order the defendant to be discharged by an indorsement on the complaint over his signature to the following effect: 'There being no sufficient cause to believe the within named ———— guilty of the offense within mentioned, I order him discharged.' "

This is the law as to what the committing magistrate shall do, and the section is mandatory as to what shall be indorsed on the complaint, for the section says *"must order the defendant to be discharged by an indorsement on the complaint over his signature to the following effect. . . ."* Then follows the words which the committing magistrate is required to indorse on the complaint. The committing magistrate in the case at bar discharged the defendant at such preliminary hearing, but did not make the indorsement required by the above section upon the criminal complaint as he should have done, and which is mandatory upon him to do. The committing magistrate was without authority to make any other indorsement or record with reference to the dismissal of the charge of which defendant stood accused, except the record made mandatory by § 10,609. The entry made by the justice of the peace at the close of the hearing, or several days afterwards, which set forth a great deal of matter, all of which was unlike and of a different nature than that required by § 10,609, was incorrect and contrary to law, and it was prejudice to admit as evidence that part of exhibit 5 which related to the reasons for the discharge of the defendant on such preliminary hearing, and the further part where it is stated that "it is the opinion of this court that probable cause to hold the defendant to the district court exists, but for the reason that he has already been confined in the county jail for about a month awaiting a preliminary hearing; and, being unable to furnish any bond for his appearance in district court, I am unwilling to order the defendant confined in the county jail for five months more to await trial at the first regular term of the

37 N. D.—28.

district court, which convenes in May, 1915." The admission of such record, which is wholly unauthorized by law, was prejudicial and constitutes reversible error.

The appellant and one G. C. Olson were indebted to the First National Bank in the sum of $1,315, which was represented by a note and chattel mortgage upon certain property hereinbefore described. The bank had purchased such paper from W. E. Hoopes. It is conceded that the debt had all been paid except $40.60. Any one of the automobiles mentioned were worth several times the amount due upon the debt, to wit, $40.60. Addressing ourselves to the question of whether or not Newberry stated all the facts of the case in which he made the criminal complaint to his attorneys, or whether he admitted to such attorneys any of the facts in the case, is a question of fact for the jury, upon which we express no opinion. It is the province of the jury to determine this question upon all the testimony adduced relative thereto.

The appellant in this case, who was the defendant in the criminal prosecution, was arrested and charged with the offense set forth in § 10,248, which is as follows: "Every person having in his possession or under his control any personal property upon which there is known to him to be a subsisting lien either by operation of law or by contract, who *wilfully* destroys, removes from the county, conceals, sells, or in any manner disposes of, otherwise than as prescribed by law, or materially injures such property or any part thereof, without the written consent of the then holder of such lien, is guilty of: 1st. A misdemeanor if the value of the property does not exceed $100; or, 2d. A felony, if the value of the property exceeds such sum."

In the foregoing law any of the acts complained of must have been done *wilfully* in order to constitute a crime. There are several things which the section says will be a crime if done, such as destroying, removing from the county, concealing, or selling, or in any manner disposing of, property upon which there is a lien. One of the crimes specified in such section is *wilfully* removing from the county property upon which there is a subsisting lien. The meaning of the word *"wilfully"* therefore becomes quite important. In penal statutes the word "wilfully" means not only that the act is done knowingly and intentionally, but it must also be done with an evil intent or with a bad purpose. See Galvin v. Gualala Mill Co. 98 Cal. 268, 33 Pac. 93; Potter v. United

States, 155 U. S. 446, 39 L. ed. 217, 15 Sup. Ct. Rep. 144. A wilful act has also been defined as one that is done knowingly and purposely with the direct object of injuring another. Hazle v. Southern P. Co. 173 Fed. 431. It has also been held that "maliciously" was equivalent to the word "wilfully." Chapman v. Com. 5 Whart. 427, 34 Am. Dec. 565. See also Bouvier's Law Dictionary defining the word "wilfully." "The word 'wilfully,' " says Chief Justice Shaw, "in the ordinary sense in which it is used in statutes, means not merely voluntarily, but with a bad purpose." Com. v. Kneeland, 20 Pick. 220. "It is frequently understood," says Bishop, "as signifying an evil intent without justifiable cause." 1 Bishop Crim. Law, § 428. In the case of Evans v. United States, 153 U. S. 584, 38 L. ed. 830, 14 Sup. Ct. Rep. 934, 9 Am. Crim. Rep. 668; the court stated: "In fact, the gravamen of the offense consists in the evil design with which the misapplication is made and a count which should omit the word 'wilfully,' etc., and 'with intent to defraud' would be clearly bad." We think, therefore, that the word "wilfully" means more than knowingly or intentionally, and that there must be an evil design or bad purpose also present. A great deal of the personal property of many of the citizens of the state of North Dakota is under a lien or chattel mortgage; and while it is so under a lien, it is often taken beyond the confines of the county in which the chattel mortgage is filed for record, and it is also true that when anyone so situated goes outside of the county limits and with him takes such chattels against which there is a subsisting lien, for instance, the team of horses which he is driving, he does so wilfully, that is, intentionally; but surely in most cases he has no bad purpose or evil intent, and unless there is a bad purpose or evil intent, it cannot be a crime under the law contained in § 10,248 to remove such property beyond the confines of the county line. There must be an evil purpose accompanying the removal of such property. There must be some circumstances to show such evil purpose, such as a destruction of the property, or a sale of the same and a conversion of the proceeds, or a concealment of the same and a refusal to disclose its whereabouts; or some other circumstances to show a bad purpose in the removal of such property. The crime mentioned in § 10,248 is a crime merely because the law says so. The things mentioned therein as being crimes are made criminal in order to extend protection to the

creditor in the preservation of the security for the debt owing him by the debtor. The acts mentioned as crimes in said action are crimes merely because the law says so. It is different in other crimes which in themselves show that the acts are really criminal, and where the acts would be wrong whether the law said they were wrong or not. For instance, in homicide. If there were no law defining and punishing homicide, it would nevertheless remain a crime for the reason that it threatens the peace of society and is criminal in its nature and intent. It abhors and terrifies society. It implies an evil purpose and intent, unless it was committed in self-defense, or while a person is insane and without the use of his reason, or for some other good and justifiable excuse and reason as defined by law.

The statute which we have been considering was enacted to protect the property rights only, and it would seem there should be some showing that there was an intent to deprive the lien holder of the security, or that there should be some bad purpose or intent, before there would be any justification for prosecution.

One's good name and reputation is a priceless treasure, and one has the right to remain secure therein. It should not be made easy to destroy one's good name or good standing in the community. The right to enjoy one's good name and reputation and the good opinion of others is one of greater significance, deeper importance, and of much more weight and consequence, than the enjoyment or protection of mere property right. Surely one's good name and reputation should not be attacked and destroyed for any light reasons, and the law should protect such valuable rights, certainly with as great care as it does mere property rights.

In this case there are just two elements,—that of malice and want of probable cause. Each of these elements must be present in this case in order to entitle the plaintiff to recover. The weight of the testimony must preponderate to show both malice and want of probable cause before recovery of damages can be had, though malice may be inferred where want of probable cause is proved. This, as we understand it, is the general rule in this class of cases.

We cannot discuss all the assignments of error and all the law and cases cited by each counsel, but we have given the matter careful

consideration, and, as before stated, find prejudicial error in the record. The judgment is reversed, and the case is remanded for a new trial.

BRUCE, Ch. J. I concur in the opinion of Mr. Justice GRACE, though not in the *dicta* therein contained in regard to what does and what does not constitute a crime.

CHRISTIANSON, J. (specially concurring) : I believe it was error to admit the evidence in regard to the attorney's lien, and also the recitals in the justice's docket stating the reasons for the justice's decision upon the preliminary examination. It is with considerable reluctance that I concur in a reversal, however, as it seems to me that the defendant established the fact that the prosecution was instituted upon the advice of the state's attorney of Foster county, after a full, fair, and honest statement of the facts, in a manner so conclusive that it is at least debatable whether there was any issue of fact to submit to the jury with respect to this defense. In any event the evidence on behalf of defendant on this feature of the case was so strong and convincing that it is difficult to see how any different result could ever be reached than that reached by the jury in this case.

In view of the different defenses interposed, it seems to me that upon a retrial it would be desirable, if the trial court would direct the jury to make findings upon particular questions of fact. And this is especially true with respect to the questions involved in the defense of the advice of the counsel.

ROBINSON, J. (concurring specially) : This is an appeal from a judgment against the plaintiff in an action to recover $5,000 for malicious prosecution. It appears that in 1914 at Carrington, the plaintiff and one Olson were engaged as partners in running a general automobile garage business. In August, 1914, to secure $1,315, they gave to the bank a mortgage on three automobiles, one office safe, a roll-top desk, and a lot of other property. The mortgage debt was represented by four promissory notes, all of which became due in September, 1914, except one note for $600, due in September, 1915; but in September, 1914, the total debt was liquidated and reduced to the sum of $40.60. Then Olson took one of the cars to Medina, North Dakota, and about,

the 1st of November Rhoads took one car and started on a trip to St. Louis, leaving in the garage across the street from the bank a car worth $150. Newberry, the cashier, knew of this car and knew that it was ample security for the balance, $40.60. He knew that he could turn the car into cash without delay. Yet, when Rhoads had got to northern Iowa, defendant Newberry went to a justice of the peace and swore to a complaint charging that on November 1, 1914, in Foster county, Rhoads did commit the crime of wilfully and feloniously removing from Foster county an automobile on which he knew there was a mortgage lien for over $40. On that complaint a warrant was issued for the arrest of Rhoads. The sheriff went to Iowa, arrested Rhoads, brought him back, put him in jail, where he was imprisoned for a month and then discharged.

The defense was that the warrant was sworn out in good faith and on the advice of the state's attorney. However, it does not appear that the state's attorney was fully advised that the mortgage debt had been reduced from $1,315 to $40.60, and that the car across the street from the bank was ample security for the small balance, and that the car in possession of Olson at Medina was worth ten times the balance. These were matters of the utmost importance, because the security was so ample and so accessible there was no possible reason for thinking that Rhoads had taken his car to Iowa to defraud the bank. If the car had been completely destroyed, the security would have been good for ten times the sum due the bank. Hence, there was no excuse for the criminal prosecution.

The purpose of a mortgage and of statutes relating to chattel mortgages is to secure the payment of an honest debt, and not to make it dangerous for a person to use his property. The automobile is made and used for rapid transit and for long drives, and its value would be greatly impaired if there were any danger in crossing state and county lines.

In this case there was not a fair trial. The record shows several gross errors manifestly prejudicial to the plaintiff. In the charge of the court it is said:

Gentlemen: The plaintiff must prove to your satisfaction by a fair preponderance of evidence: (1) That a criminal prosecution was instituted against the plaintiff; (2) that the defendants in this action in-

stituted or procured the institution of the prosecution; (3) that said criminal prosecution was terminated by an acquittal or a discharge of the plaintiff before the commencement of the action. These matters were all proved by record evidence, and were not in dispute. Hence, there was no reason for submitting them as matters in dispute.

Then it was said by the court: I charge that if the plaintiff is guilty of the offense which was charged against him, that is a complete defense. Now that was error of the grossest kind. The plaintiff was not on trial for any offense, and there was no evidence whatever to show that he was guilty. On the contrary, the evidence showed clearly that there never was any reason for thinking him guilty.

Then Mr. Craven, the state's attorney, was sworn, and against objection he was permitted to answer a question concerning his belief as to the probable guilt of Rhoads when the warrant was issued. His answer was: "I believed it then and I still do." And thus the belief of the prosecuting attorney was thrown into the scale against Rhoads. The error was about as gross as if the judge himself had given similar testimony.

Then the court received in evidence the original summons and complaint in this action, with a notice of an excessive lien claimed by the attorneys. The only purpose of that was to prejudice the jury, and the same is true of all the other testimony regarding one Maloney and his checks and his conduct.

The court also erred in admitting in evidence the made-up record of the justice of the peace, which was in effect that while he found the defendant not guilty, he thought him guilty.

In a suit for malicious prosecution it was well to remember the terms "malice" and "maliciously" import a *wish* to vex, annoy, or injure another person or an intent to do a wrongful act, established either by proof or presumption of law. Comp. Laws, § 10,360. Good faith or fool innocence does not justify a wrongful act.

Every person is bound to abstain from injuring the person or property of another, or infringing upon any of his rights. Comp. Laws, § 5942, 26 Cyc.

Judgment reversed and new trial ordered.