STATE of North Dakota, Plaintiff and
Respondent,

v.

Allen RAMSTAD, Defendant and Appellant.

Cr. No. 283.

Supreme Court of North Dakota.

Jan. 30, 1958.

Rehearing Denied Feb. 11, 1958.

Leslie R. Burgum, Atty. Gen., and Lyle E. Huseby, State's Atty., Fargo, for plaintiff and respondent.

Lanier, Lanier & Knox, Fargo, for defendant and appellant.

MORRIS, Judge.

In a Criminal Information filed by the State's Attorney of Cass County the defendant was charged with committing .the crime of removing or concealing or selling or disposing of property subject to a lien. The property is further described in the Information as being 60 head of yearling white-face bred ewes upon which there was known to the defendant to be a subsisting lien by reason of a chattel mortgage dated January 9, 1956 given by the defendant and his wife to Gyda Vculek. It is also charged that this property exceeded in value the sum of $100. The defendant did not challenge the form of the Information and after a trial by a jury a verdict of guilty was rendered pursuant to which judgment and sentence were pronounced by the court on April 5, 1957.

After the verdict was rendered and before sentence was pronounced the defendant moved for a new trial. The hearing on this motion was set for April 15, 1957. The matter was continued by stipulation in order to permit time for obtaining a transcript. The statement of the case was later settled by stipulation and an order of the court made pursuant thereto. The motion for new trial was heard on June 24, 1957 and on that date the court entered an order denying the motion.

The motion for a new trial was accompanied by specifications of error challenging the sufficiency of the evidence to support the verdict and the judgment of conviction. The defendant also specified errors in law with respect to certain instructions to the jury and rulings of the court on the admission and exclusion of evidence. We will first consider the sufficiency of the evidence to support the verdict.

We approach the question of the sufficiency of the evidence to support the verdict bearing in mind these rules. In passing on a motion for a new trial based on the insufficiency of the evidence the trial court is clothed with a wide discretion and his determination will not be disturbed unless there appears to have been an abuse of discretion. State v. Braathen, 77 N.D. 309, 43 N.W.2d 202; State v. Graber, 77 N.D. 645, 44 N.W.2d 798; State v. Whiteman, N.D., 79 N.W.2d 528; State v. Pusch, N.D., 79 N.W.2d 295. It is not an abuse of discretion on the part of the trial court to deny the motion for new trial on the ground of insufficiency of the evidence where there is substantial evidence to support the verdict. State v. Foster, 14 N.D. 561, 105 N.W. 938; Nilson v. Horton, 19 N.D. 187, 123 N.W. 397; State v. Mozinski, 49 N.D. 228, 191 N.W. 345; State v. Shepard, 68 N.D. 143, 277 N.W. 315; State v. Graber, supra. See State v. Hazer, 57 N.D. 900, 225 N.W. 319.

Mrs. Gyda Vculek operates a farm near Crete in northwestern Sargent County. At the time of the incidents involved in this case she was assisted by her 22 year old son Bernard Lee Vculek and John Hopkins, the hired man. Among her farming activities was sheep raising. The breed of these sheep is described as a cross between the Columbia and the Rambouillet. Witnesses describe them as white-faced or greyish-white.

The defendant is a farmer who operates a farm in north central Cass County about 100 miles from the farm of Mrs. Vculek. On January 9 and 10, 1956 he purchased from her 120 yearling ewes for $2,595. He gave her a check dated January 10, 1956 for $215 with the understanding that she would hold it for a few days. She deposited the check three times and each

time it was returned by the drawee bank for insufficient funds. In addition to the check the defendant gave Mrs. Vculek a mortgage for the balance of $2,380 covering "One hundred twenty (120) head of yearling white face bred ewes and the increase of said ewes and all of the wool when said sheep are sheared." This mortgage was filed for record in the office of the Register of Deeds of Cass County on February 27, 1956. The balance of the purchase price secured by the mortgage was to be paid in installments. Mrs. Vculek was to get $50 on February 1, $50 on March 1 and $50 on March 20, 1956. On March 16 the defendant sent Mrs. Vculek a money order for $80. At that time he was in default for the amount of the check and two payments, making a total of $315.

On March 15, 1956 Bernard Lee Vculek and John Hopkins, Mrs. Vculek's hired man, went to the defendant's farm and looked at the sheep in his feed lot. Some were white-faced and some black-faced. There were approximately 104 altogether, about 60 being white-faced. These were the only sheep on the farm that the visitors could see. When Bernard asked the defendant where the sheep were he said he didn't know, he thought they were there in the morning. He also said that his hired man who had left a few days before could have stolen them. They counted the sheep again and arrived at a top count of 60 white-faced yearlings. The rest were black-faced. On March 23 Mrs. Vculek and her son returned to the farm of the defendant with a truck and driver. The defendant refused to give up any of the sheep. On March 27, 1956 Mrs. Vculek subscribed and swore to a Criminal Complaint charging the defendant with the crime for which he was later tried. On April 16 Mrs. Vculek repossessed 57 of the sheep covered by the mortgage.

On February 9, 1956 the witness Leo Briedenback purchased from the defendant through the Harrington Brothers Livestock sales ring at Mayville, N. D., 10 yearling bred ewes for $20.25 each. He described them as white-faced or dirty-white. They were a cross between Rambouillet and Columbia. On February 16 he purchased 5 more of defendant's ewes of the same kind for $20 each.

It is clearly established that the defendant bought 120 yearling white-faced or grey-faced bred ewes from Mrs. Vculek on which he gave a purchase money mortgage. He defaulted on the mortgage almost immediately. When Mrs. Vculek's son and hired man went to the defendant's farm about two months later half of the ewes could not be found. He admitted they were missing but his explanation of their disappearance was vague. Neither at that time nor at the trial did he offer a plausible explanation as to what happened to them. He testified at the trial that when he realized the sheep were missing he did not report the fact to the authorities but said he looked for them himself for a week and after that he kept looking around and thinking they might show up. When cross-examined about the sheep he sold through the Harrington Brothers sales ring his statements were evasive. In order to be properly evaluated they must be quoted.

"Isn't it a fact that you took 10 grayish ewes, yearling bred ewes, to the Harrington Brothers at Mayville to be sold? A. I wouldn't say that.

"Q. Well, what would you say, Mr. Ramstad? A. Well, it was a mixture.

"Q. Were any of those Mrs. Vculek's ewes? A. I wouldn't know. I took sheep out of the herd. I just chased the sheep in and put them in my pickup and took them into Mayville.

"Q. Is it possible that some of them were Mrs. Vculek's ewes? A. It could be and it could not be.

"Q. I see. Is it possible that some of the ewes that you sold on the 16th of February were Mrs. Vculek's ewes? A. I would answer that the same.

"Q. It could be that they were her ewes? A. I would say yes and I would say no.

"Q. I see. And is it possible that on the first of March that some of those ewes that you sold to or had the Harrington Brothers sell for you were Mrs. Vculek's ewes? A. I would answer it the same way.

"Q. When did this hired man leave? A. Well, he went for a few days and then he came back with the milkman and we went over to a neighbor to talk over some school affairs and when I came back his clothes were gone and he was gone.

"Q. What was the date of that? A. I believe when Bernard was up there he was gone then. Anyway he disappeared.

"Q. Did he own a truck? A. Not that I know of.

"Q. And is it your testimony now that you don't believe he took the sheep? A. No, I don't think he did.

"Q. But outside of the possibility that some of these sheep you sold at the Harrington Brothers were Mrs. Vculek's, so far as the balance of the 60 ewes, you don't know where they went? A. I would say I don't know where they went."

When all the evidence in this case is considered it is sufficient to warrant the jury in returning a verdict of guilty. The trial judge who heard this evidence and observed the conduct of the witnesses, including the defendant, during the course of the trial found the evidence to be sufficient. The court did not err when in the exercise of his discretion he denied defendant's motion for a new trial on the ground of insufficiency of the evidence to support the verdict.

The defendant predicates error on the admission of three exhibits, being consignment records of Harrington Brothers, operators of a livestock sales auction, showing sales of sheep by the defendant, the objection being that no proper foundation was laid, that the exhibits are hearsay, not the best evidence and not the original records. These exhibits were identified by Harold Harrington who testified how they were kept and that they were kept under his supervision. It appears that these records are the first records made in the office of Harrington Brothers. The information that goes on these records is furnished to the office force by employees handling the livestock in the yards. A small ticket is made out by the yard employee and turned in to the office or the employee gives the information to the office orally. Mr. Harrington explained the process this way:

"In our yard we have chutes at both ends. One is near the office and the other chutes are at the far end. If they happen to unload at the far end, which is generally where we accept the cattle, then a small ticket is made out which is forwarded down to the office which is at the other end. If they happen to unload at the chute near the office, the yard man may merely come in and tell the girls what he has, and it will be recorded in this book. But this is our record of consignment."

As a basis for his objection counsel for the defendant asserted that he was entitled to see and have produced the small tickets so that he could check from them the accuracy of the entries in the exhibits. However it does not appear that in these particular sales small tickets were made out or that the tickets were kept after entries were made in the office records.

Section 31–0801, NDRC 1943 provides:

"A record of an act, condition, or event shall be competent evidence, insofar as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

"2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

"3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission."

The foregoing is the Uniform Business Records As Evidence Act. The chief purpose of this statute is to broaden and extend the shop book exception to the hearsay rule to make it more practical in the light of modern business practice. It has no effect upon relevancy but permits a wide discretion on the part of the trial court in passing upon the sufficiency of the foundation of proffered evidence that comes within the purview of the statute. The ruling of the trial court with respect to the admission of such evidence should not be disturbed by the appellate court except for a manifest abuse of that discretion. Douglas Creditors Ass'n v. Padelford, 181 Or. 345, 182 P.2d 390; Cantrill v. American Mail Line, 42 Wash.2d 590, 257 P.2d 179. The statute is not restricted in its application to evidence in civil actions. It is also applicable to criminal actions and has been so applied in other jurisdictions. State v. Hampton, Mo., 275 S.W.2d 356; State v. Phillips, 90 Ohio App. 44, 103 N.E.2d 14; People v. Gorgol, 122 Cal.App.2d 281, 265 P.2d 69; People v. Fowzer, 127 Cal.App.2d 742, 274 P.2d 471; People v. Terrell, 138 Cal.App.2d 35, 291 P.2d 155. We reach the conclusion that under the facts disclosed by this record the trial court did not abuse his discretion in admitting the exhibits under discussion.

The defendant rests a group of specified errors on the contention that criminal intent is an element of the crime with which he was charged and he was therefore entitled to introduce evidence bearing upon his intent and that the court erroneously sustained objections to and excluded defendant's evidence of his intent. We will consider this group of specifications together. Section 35-0126, NDRC 1943, the statute defining the crime for which the defendant was being prosecuted, makes criminal the commission of certain acts with respect to property in the possession or under the control of a person charged and upon which there is known to him to be a subsisting lien. In this case the lien is a mortgage. The property was sheep. In order for the mortgage to constitute a subsisting lien it must have secured an unpaid debt and in order for the acts charged to constitute a penal offense the unpaid debt must have existed at the time the crime was alleged to have been committed. That time is March 15, 1956. It was therefore not only proper but essential that the State prove that the defendant was indebted to Mrs. Vculek on that date and that the debt was secured by a mortgage on the property the defendant is alleged to have destroyed, removed, concealed, sold or disposed of without the written consent of the holder of the lien. State v. Strong, 52 N.D. 197, 201 N.W. 858.

The defendant contends that the court erred in refusing to permit him over objection to testify that he "at any time intended to beat Mrs. Vculek out of any money" and to state that regardless of his intentions he had not beaten her out of any money. The defendant is not charged with defrauding Mrs. Vculek. He is charged with committing specific acts forbidden by the statute. It contains no mention of fraud. He does not deny an intent to commit the acts which the statute forbids and with which he is charged, or any of them. The court committed no error in sustaining objections to this testimony.

The court also sustained objections to an attempt on the part of the defendant to show that after he was arrested he made a settlement with Mrs. Vculek, that he had made various payments to her up to the time of trial, and that he had paid her in full and owed her nothing.

The defendant contends that the State in the testimony that it elicited from Mrs.

Vculek opened up the question of payments and the amount that the defendant owed her and that he therefore had a right to show that at the time of trial he owed her nothing. Mrs. Vculek testified that she never received any lambs or wool from the missing sheep and stated the amount that was owing on the mortgage on March 15 or 16, 1956. This testimony was both relevant and competent to establish that there was a valid and subsisting lien on the sheep at the time the defendant was charged with committing the acts forbidden by statute. By making this necessary proof the State did not render either relevant or competent evidence of the subsequent settlement and payment which has no bearing upon the commission of the acts with which defendant is charged or the intent with which they were committed.

 The defendant specifies as error the giving of this instruction to the jury:

"The term 'wilfully', when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or omission referred to."

In support of his contention the defendant quotes from the civil case of Rhoads v. First National Bank, 37 N.D. 421, 163 N. W. 1046, 1050, in which this language appears:

"In penal statutes the word 'willfully' means, not only that the act is done knowingly and intentionally, but it must also be done with evil intent or with a bad purpose."

This statement is not only dictum but is not concurred in by a majority of the court, a fact which appears from three concurring opinions.

In State v. Bronkol, 5 N.D. 507, 67 N.W. 680, this court construed a statute that is the ancestor of our present Section 35–0126, NDRC 1943 in which the term "wilfully" was used in the same context and with the same meaning as in our present statute. In the syllabus of that case it is said:

"Section 6933, Comp.Laws, construed. *Held,* that the statutory offense defined by the section is established by showing that a sale of mortgaged property without the consent of the mortgagee, and while the mortgage was in force, was made 'willfully'; i.e. intentionally, and not by a mistake. The intent to defraud by such sale is not an essential ingredient of the crime."

The defendant's criticism of the above quoted instruction loses its entire force when considered in connection with this further instruction that follows shortly thereafter:

"You are instructed, Members of the Jury, that there can be no conviction of destroying, removing, concealing, selling or disposing of the personal property upon which there is a subsisting lien unless there was a criminal intent at the time on the part of the defendant to sell and dispose of the property covered by the lien."

When these two instructions are considered together they appear to be favorable to the defendant. The term "criminal intent" is stronger and more positive than the language of Rhoads v. First National Bank, *supra.* No prejudicial error was committed by the court in so instructing the jury.

 The last of the defendant's specifications that merit consideration is based on the contention that the court should have submitted a form of verdict which would have permitted the jury to find the defendant guilty of a misdemeanor. Only two verdicts were submitted, guilty of a felony or not guilty. It is pointed out that the statute provides that the crime is a misdemeanor if the value of the property does not exceed $100. The evidence in this case does not permit of a finding that the defendant was guilty of a misdemeanor. Such a verdict would require a determination that the sheep which he sold or other-

wise disposed of were worth less than $100. He purchased the missing sheep for $21.25 a head. The evidence is such that in order to find the defendant guilty the jury must have reached the conclusion that he sold 10 of these sheep through the Harrington Brothers sales ring for $20.25 a head and a few days later sold 5 more for $20 a head. Thus the 15 sheep were sold at public auction for $302.50. This evidence establishes that if the defendant was guilty at all he was guilty of a felony. The court did not err in submitting only two forms of verdict.

We reach the conclusion that the trial court did not abuse his discretion in refusing to grant a new trial on the ground of insufficiency of the evidence. We find no prejudicial error in the challenged rulings of the court or the instructions to the jury. The order denying defendant's motion for new trial is therefore affirmed.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.