### BERRY *v.* THE STATE.

*Simmons, C. J.*—1. It being essential to the legality of a conviction for cheating and swindling, alleged to have been accomplished in part by false and fraudulent representations, that such representations should both deceive and injure the person alleged to have been thereby defrauded, a request to charge to this effect, when authorized by the evidence, should be given.

2. The main representation alleged to have been falsely and fraudulently made, and by means of which the alleged cheating and swindling was effectuated, being in substance that the accused was the owner in his own right of certain land; and there being no evidence at all that he made any such representation, but very strong evidence to the contrary, the verdict of guilty was not supported by the evidence, and the motion for a new trial ought to have been sustained.          *Judgment reversed.*
July 29, 1895.

Indictment for cheating and swindling.   Before Judge Willis.   City court of Columbus.   April term, 1895.

The indictment charged, that on May 20, 1892, Berry falsely and fraudulently represented to Brannon & Wynn, that he was a farmer farming in Chattahoochee county, and was then and there the landlord of Ed. Perry, his tenant on his said farm in said county, and that if they would lend and advance to him (Berry) $12.50 for the use and benefit of his said tenant Perry, to make and cultivate his crop growing on said farm, he (Berry) would waive and renounce, and did waive and renounce as landlord, his interest in and to one half bale of 500 pounds of cotton to them

(Brannon & Wynn); by which means he induced them to lend and advance said sum to him for the use of Perry, he not being then and there the landlord of Perry, and not having any right, title or interest in said cotton to waive and renounce unto Brannon & Wynn; whereby they were cheated and defrauded, etc. The evidence showed, that on February 11, 1892, Berry went to the store of Brannon & Wynn and stated to them that Maddox, Johnson and Perry (who accompanied him) were his tenants, that he desired Brannon & Wynn to sell them some supplies on credit, and that if they would do so he would waive his lien as landlord to the extent of the first seven bales of cotton as rent. They agreed to do so, and thereupon drew up a waiver to three bales of cotton as to Maddox and four as to Perry, which Berry signed. They also took mortgage notes from said tenants upon their crops, and sold supplies to Perry to the amount of $120, and to Maddox to the amount of $90. On May 20, 1892, Berry again came to the store and said he wanted to get $25 for said tenants, with which to chop their cotton, and that if Brannon & Wynn would let him have the money, he would give them a waiver of one more bale of cotton. They did so, and he excuted an additional waiver to one half bale each as to Maddox and Perry. He did not own the land on which the tenants were working; it was owned by one Simons, from whom defendant had rented it, and subrented to Maddox and Perry. At the time of the execution of the waivers, nothing was said about the ownership of the land, but Brannon & Wynn thought the tenants were living upon the land of defendant. In payment for the supplies and cash so furnished, Brannon & Wynn received only five bales of cotton; the balance of the indebtedness is still unpaid. They foreclosed their mortgages, but were unable to collect them, because Simons sued out a distress warrant against Berry for five bales of cotton, the amount due from him to Simons for rent of the land, and had the same

levied on six bales which, together with the five bales received by Brannon & Wynn, constituted the crop made by Maddox and Perry.    The six bales were sold by the sheriff, and a rule was brought for distribution of the proceeds. This was settled by the attorneys of Brannon & Wynn getting $20 or $25 as their fee, and Simons getting the balance.    It further appears, that in March, 1892, Berry sold to Miller & Miller everything he had, including land, personalty, and the equities he had in rent claims against Perry and Maddox, the latter being the right to claim four of the nine bales of cotton they had agreed to pay Berry as rent, he having promised Simons five bales for rent of the land.    Miller & Miller knew nothing of the waivers made to Brannon & Wynn, until the fall of the year, when they ratified the same by dismissing a distress warrant they had sued out for rent, and did not contend for any of the money raised by levy and sale as before mentioned.    Neither they nor Berry ever got a pound of cotton or a cent of money from the crops of Maddox or Perry for 1892.    Brannon & Wynn got all of said crops, except what Simons got. There was evidence that Brannon & Wynn were informed by Berry, at the time of drawing the mortgages, that Perry and Maddox lived on the Simons place and Johnson lived on the Berry place.

The jury found the defendant guilty.    He moved for a new trial, on the grounds, that the verdict was contrary to law and evidence, and that the court refused to give the following instruction in charge: "If you should believe from the evidence that at the time the first waivers were made, Brannon & Wynn had notice that the defendant was renting the land upon which the tenant Ed. Perry lived, from Simons, and that the said tenant was subrenting from the defendant, then I charge you, if you believe the defendant was not landlord at the time of the execution of the last waivers, and you should believe that Brannon & Wynn got all of the cotton made by these tenants, except

what Simons got as rent, then the defendant would not be guilty."

The motion was overruled, and defendant excepted.

*Miller & Miller,* for plaintiff in error.
*Tol. Y. Crawford, solicitor,* contra.