## 2323.　HAY et al. v. THE STATE.

HILL, C. J.　This was a conviction of a violation of § 670 of the Penal Code, defining general offenses of cheating and swindling. The evidence for the State does not clearly show that any "deceitful means or artful practice" was used to defraud and cheat. It does clearly show that no one was defrauded or cheated by the representations made by the defendants and characterized in the accusation as "false and fraudulent." The only witness on the subject testified that he could not state that there was a loss in dollars and cents. Actual pecuniary loss is an essential ingredient of the offense of cheating and swindling, and must be proved. *Franklin* v. *State,* 2 *Ga. App.* 385 (58 S. E. 491); *Busby* v. *State,* 120 *Ga.* 858 (48 S. E. 314); *Rucker* v. *State,* 114 *Ga.* 13 (39 S. E. 902).

　　　　　　　　　　　　　　　　　　　　*Judgment reversed.*

POWELL, J., dissenting.　I think the State showed a case of loss, in the legal sense of the word. To my mind, the defendants were guilty of one of those fraudulent devices and artful practices made penal by the criminal code.

Accusation of cheating and swindling; from city court of Richmond county—Judge Eve.    October 28, 1909.

Submitted January 12,—Decided February 10, 1910.

The accusation charged, in substance, that Hay and Lawson, by deceitful means and artful practices, cheated and defrauded the Graniteville Manufacturing Company of ten dollars, in that they falsely and fraudulently represented to Hickman, president of the company, that they were members of the Brotherhood of Railroad Trainmen, and were, with the knowledge and consent of the local lodge of the said brotherhood, publishing a book to be known as the "Trainmen's Time Book," and were authorized by said lodge to sell advertising space in the book, and that the book would be used by all railroad men running into and out of Augusta throughout the year; that the said president, relying on the truth of these statements, bought advertising space in the said book, and paid ten dollars for it.    The defendants were convicted, and, their motion for a new trial having been overruled, they excepted.

From the evidence it appears that the defendants went to the office of Hickman, president of the Graniteville Manufacturing Company, in the city of Augusta, accompanied by Veno, an officer of the local lodge of the Brotherhood of Railroad Trainmen, and presented to Hickman a letter, signed by Veno·and another officer of the lodge, as follows: "Brotherhood of Railroad Trainmen, B. of R. T. Lodge No. 543.  To our business friends: This will introduce to you Lawson and Hay, whom we have instructed to call on you in regard to our official time book and compensation record, which will be used by all railroad men throughout the year.    They will explain the details, and any courtesies extended them will be duly appreciated by the lodge and undersigned.    Yours very truly, J. R. Veno, O. G., John H. McKenzie, Sect. 543.    (Seal of Augusta Lodge.)"  Hickman testified: "Mr. Lawson and Mr. Hay came to my office  .   .   and said they represented the Brotherhood of Trainmen, and that they were getting out a kind of schedule and wanted us to advertise in it, and I said, 'We are wholesale dealers, and a local advertisement would do us no good;' and Mr. Lawson said it was a good thing to be with union men, and I said, 'I have always been friendly with the union men, but I don't want to advertise;' and he said it was for the benefit of the Brotherhood of Trainmen, and I said, 'All right, how much is it?'

He said 'ten dollars,' and I said, 'That is nothing, we will give that to them.' I asked him what authority they had, and I said, 'You are strangers to me;' and they handed me this letter and said, 'Here is our authority.' After seeing a letter, and my conversation with Messrs. Hay and Lawson, I thought I was helping the Brotherhood of Trainmen by subscribing to their paper. I subscribed or bought advertising space in the book on the faith that these men were members of the Brotherhood of Railroad Trainmen. I paid ten dollars for the space of our advertisement. Mr. Lawson said, 'Just give me the money,' and I said, 'We don't do business that way, I will give you a check,' and asked who to make it payable to, and he said 'J. N. Lawson,' and I said, 'You are a committee, must I make it to one of you as chairman?' He said 'All right, make it to "J. N. Lawson, Chairman."' [The check was endorsed by Lawson as "Chairman," and paid.] . . These men came in the office and introduced themselves, and when I asked for credentials, they showed me the letter and told me it was gotten up by the Brotherhood of Trainmen. . . I would not have given the advertisement unless they showed me their credentials. . . The advertisement I contracted for and bought is in the book. They said this book would be distributed everywhere. I thought the book would be of use to the general public, but I did not pay particular attention to that. . . We bought space only for the good will of these people, and I thought it would be good to advertise in their book. I don't think I got what I contracted for. The advertisement is exactly correct, but when I bought the space I supposed it was being given to the brotherhood. I did it as a friendly act to the brotherhood. I got what I contracted for in the advertisement. The advertisement was placed in the book as I told them to place it. I don't know that the advertisement was not distributed as they said it would be. . . Mr. Veno was with these men, but I don't recall that he made any statement. They referred to Mr. Veno as a lodge member, as showing he was all right. . . They said, 'We represent the Brotherhood of Trainmen.' I am not prepared to swear that either Hay or Lawson told me that they or either of them were members of the Brotherhood of Railroad Trainmen. They took my advertisement as representing the Railroad Trainmen. It was on the faith of the letter exhibited by them to me that I bought advertising space. I can not swear positively

as to whether I received any loss by this advertisement. As to whether I would have given this advertisement and paid this ten dollars if these people had represented that it was their individual undertaking, I will say no. I sustained a loss as represented by this check, but I can't say in dollars and cents. . . I can swear that I lost the amount represented by this check. I consider the ten dollars thrown away. If the Brotherhood of Trainmen repudiated this book, I don't think it would be worth anything. . . I did not expect to get anything from the advertisement except the good will of the brotherhood. I consider that I sustained a pecuniary loss of ten dollars. If these books had been distributed as they represented they would be, and the brotherhood endorsed the publication of the book, I think I would have gotten what I contracted for. I did not receive a single order on account of these books. All of our orders for the last six months were from China." Connor, an officer of the local lodge of the Brotherhood of Railroad Trainmen, testified, that Hay and Lawson were not members of the brotherhood, and the brotherhood did not authorize the letter referred to, and the local lodge did not authorize the publication of the book mentioned, and received no benefit from it; that Hay had requested him to write a letter similar to the one exhibited, and he told Hay that the brotherhood could not give him such a letter; and as soon as the local lodge ascertained the existence of this letter charges were preferred against Veno and McKenzie, and they were discharged from the lodge. McKenzie testified, that he was secretary of the Brotherhood of Railroad Trainmen when the letter in question was written; that Hay and Lawson were introduced to him by Veno, and Hay said he was going to get up a trainmen's time-book, and wanted a letter of introduction to the merchants of Augusta, like a letter he exhibited, which bore the letter-head of the Brotherhood of Railroad Trainmen, and was signed by officers of a lodge in Montgomery, Alabama, and also bore the seal of that lodge; that he authorized them to write such a letter, and they did so, on stationery of the Augusta lodge, and he signed it; that they did not represent themselves to be Railroad Trainmen, and he could tell that they were not members of the brotherhood; that they got up the book, and he had no more dealings with them; he gave them a list of all the railroad men he could think of, going into and out of Augusta, and the time-books

were mailed to them; he was a railroad man and used the book in his business; the books were mailed by him individually, and not by the lodge; the lodge disapproved of his action and preferred charges against him for violating his obligations. Another witness testified that he was a member of the Brotherhood of Trainmen, and received one of the books mentioned, and kept his time in it. The defendants made statements to the jury, in which they denied fraudulent intent.

*George T. Jackson, W. Inman Curry,* for plaintiff in error.

*J. C. C. Black Jr., solicitor,* contra.