### 2751. FOSTER *v.* THE STATE.

1. The offense of cheating and swindling consists of some false pretense, device, trick, or contrivance fraudulently made or enacted by the defendant with the intent to deceive the prosecutor or the public, so successfully accomplished that the prosecutor or some member of the public is in fact deceived thereby and suffers loss or damage. If the false pretense consists in a representation, it must relate, in part at least, and materially, to a present or past fact or state of facts, and not consist merely in a false promise or statement as to something to happen in the future.

2. A person may be guilty of cheating and swindling in a transaction in which both parties know that they are violating or about to violate the law, provided that the one therein cheats and swindles the other out of something of value. But neither counterfeit money itself nor the possession thereof is a thing of value; and therefore one person can not cheat and swindle the other by representing to him that if he will go to certain expense he can procure at a certain time and place a designated amount of counterfeit money, though the latter fails to get the expected spurious currency.

(*a*) There may be an exception to this rule in a case where a person of superior or sharpened intellect or cunning imposes upon the credulity of a very ignorant or weakminded person and secures the latter's money or property; but the present case does not fall within any such exception.

DECIDED JULY 25, 1910.

Accusation of cheating and swindling; from city court of Hall county—Judge Looper.    June 20, 1910.

*B. P. Gaillard Jr.,* for plaintiff in error.

*Fletcher M. Johnson, solicitor,* contra.

POWELL, J.   The defendant was convicted of cheating and swindling.    It seems from this record that there was in Gainesville a grass-widow named Mrs. Robertson, and that she had as an intimate acquaintance the defendant, Foster, who was a young married man, connected with some kind of a show.    According to Mrs. Robertson's version of the transaction here involved, Foster told her that he represented a Cincinnati company which organized lodges and furnished counterfeit money to its members; that he could cause her to be initiated by her paying the sum of $100, and that she would receive $500 in counterfeit money; but that she would have to go to Jacksonville, Florida (where the company's agent would be on January 12-14), to be initiated and get the money.    It was understood between them that they were to leave Gainesville secretly; so, on the night of January 12th, she privately met him at the railroad station.    Here she gave him $10 to purchase her ticket to Atlanta.    He purchased it for $3.15 and offered her back the change, but she told him to keep it for her.    In Atlanta she gave him $20 with which to buy her a mileage book, and he bought that for her, putting the book in his pocket after securing her transportation to Jacksonville from it.    Arriving in Jacksonville next day, she gave him the $100 with which he was to get her the $500 in spurious currency.    He didn't come back.    She was left penniless, but borrowed enough money from a policeman to get back home.    She returned from Jacksonville on the same day she arrived there.

The defendant's statement was, that the affair was purely a meretricious escapade; that he and the woman left secretly and went to Jacksonville merely on a pleasure trip of a libidinous nature; that she gave him her money to keep for her, because she had no safe means of keeping it herself; that on the day of their arrival in Jacksonville, after they had spent a while in the room

they were jointly occupying, he went down to the bar, where he met a number of old acquaintances; that he there became involved in a fight in which he was severely cut and slashed with a knife, and he was sent to a hospital, where he was confined for some time; that Mrs. Robertson, taking fright at what had happened, left him and returned to Gainesville. No other witness testified. .

What the truth of this affair is, we, of course, do not know. Our personal views on that subject are not material. The jury's finding has given credence to the woman's version, and we must accept that as conclusive of the facts. But do the facts make a case of cheating and swindling in Hall county, in which Gainesville is located? The accusation was apparently based on § 670 of the Penal Code of 1895, which provides, "Any person using any deceitful means or artful practice, other than those which are mentioned in this code, by which an individual, or the public, is defrauded and cheated, shall be punished as for a misdemeanor." In Scots and civil law, the word "stellionate" is used to denote all such crimes in which fraud is an ingredient as have no special names to distinguish them, and are not defined by any written law. This section may, therefore, be said to be the statute against stellionates. However, the elements essential to the maintenance of a prosecution under it are tolerably well defined by the decisions of the court. There must be a false pretense, device, trick, or contrivance fraudulently made or enacted by the defendant with intent to deceive the prosecutor or person injured, so successfully accomplished that the prosecutor or person injured is in fact deceived and thereby suffers loss or damage. If the false pretense consists in a representation, it must relate (in part at least, and materially so) to a present or past fact or state of facts, and not consist merely in a false promise as to something to happen in the future. If the representation relied on by the State in this case be that there was a Cincinnati company forming lodges and selling counterfeit money to its initiates, the State did not prove that the representation was false. If the representation relied on be the statement that a representative of that company would be in Jacksonville on a named day and would deliver the money, the prosecution can not be maintained, for that related to a future matter.

But beyond all this, the prosecution should not lie for the offense of cheating and swindling, under the facts of this case. How

was Mrs. Robertson swindled? We must eliminate all transactions occurring out of Hall county, except in so far as they illustrate and give legal point to what occurred there. Was Mrs. Robertson deceived in Hall county? Yes; she was deceived into believing that if she would go to Jacksonville, Florida, she could get $500 in spurious currency in return for $100. She makes no complaint of not getting all she expected to get out of the trip and in return for the money she expended in connection therewith, except that she did not get the counterfeit money. The transaction in Jacksonville, whereby she was induced to turn the $100 over to Foster, must be eliminated; for that occurred in Florida. So the question resolves itself into this: Can the defendant be convicted of cheating·and swindling because he falsely represented to the prosecutrix that the existing conditions were such that, if she would go to certain expense, she could buy a certain amount of counterfeit money, and she, believing him, incurred that expense and did not get the counterfeit money? The question must be answered in the negative. If the representation had proved true, she would have been in a worse fix than she was when it proved untrue. The very possession of the counterfeit money would have made her a felon. As it was, when she did not get it, she was simply left as a foolish woman with less money and more experience; and, in legal contemplation at least, even this is better than being a felon.

We are not to be understood as holding that cheating and swindling can not be predicated of an unlawful transaction. There are many transactions for which the State can prosecute where the parties, by reason of the uncleanness of their hands, would not be allowed to maintain a civil action. Thus, although the sale of liquor is a crime in this State, yet if the keeper of a "blind tiger" should represent to a prospective purchaser that a bottle contained corn whisky, and should sell it as a bottle of corn whisky, receiving therefor the purchaser's money, when in fact it contained water only, he could be held for cheating and swindling. Or, if in a similar case the prospective purchaser should palm off on the keeper of a "bind tiger," in the nighttime, a worthless slip of paper as a dollar bill, and receive in exchange therefor a quart of whisky, the person so deceiving the seller of the liquor could be convicted of cheating and swindling. However, it must be noticed in each of

these illustrations that the person deceived parts with something of value. It is true that in this State liquor can not be said to have any market value in the full sense of the words; yet it is a thing of value. *Mance* v. *State*, 5 *Ga. App.* 229(3), and cit. But in no sense is counterfeit money a thing of value. The very possession of it is criminal. It is a violation of law to make it, to own it, or use it. It is utterly without value. Suppose that the defendant had said to the prosecutrix, "Your sworn enemy is in Jacksonville; if you will go there with me and pay me $100, I will show that enemy to you that you may poison him." Suppose the defendant's statement were a lie, could the transaction be treated as cheating and swindling? The privilege of poisoning one's enemy is not a thing of value.

This case is also to be distinguished from those cases in which the defendant, by imposing on the credulity or weakmindedness of the prosecutor, has caused him to pay money for something which could not be of value, but which the prosecutor was led to believe was in fact so. In such cases a prosecution for cheating and swindling may lie. But in this case the prosecutrix acted with her eyes open; she admitted that she knew that the money she was to get would not be good money.

Plainly, the conviction can not rest on the failure of the defendant to return the change out of the ten-dollar bill which he received from the prosecutrix at Gainesville to buy her railroad ticket to Atlanta. She asked him to keep that for her. If he failed to return it on demand, the criminality of the transaction might be investigated under an indictment for larceny after trust, but not under this accusation for cheating and swindling.

However consummate the defendant's knavery may appear, however pitiable is the plight of the prosecutrix, we are constrained to hold that the defendant's conviction must be set aside. And after all —

> "When lovely woman stoops to folly
> And finds too late that men betray,
> What charm can soothe her melancholy?
> What art can wash her guilt away?"

*Judgment reversed.*