## BERRY *v.* THE STATE.

1. Section 34 of the act of August 16, 1919, entitled "An act to regulate banking in the State of Georgia; to create the Department of Banking of the State of Georgia; to provide for the incorporation of banks, and the amendment, renewal, and surrender of charters; to provide penalties for the violations of laws with reference to banking and the banking business; and for other purposes," is not in conflict with article 3, section 7, paragraph, 17, of the constitution of this State, which declares that "No law, or section of the Code, shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made," on the ground that said act amends or repeals the act of the General Assembly of this State, approved August 14, 1914, entitled "An act declaring it a misdemeanor to draw and utter any check, draft, or order when the drawer has not at the time sufficient funds to meet the same, provided such drawer does not deposit with the drawee sufficient funds to meet the same within thirty days; providing punishment therefor, and for other purposes," it being claimed that the former act amended or repealed the latter act without any reference to the title of the latter and without distinctly describing the latter act, as well as the alteration to be made therein.

2. On the trial of the defendant indicted under section 34 of said act of August 16, 1919, a charge to the effect that if the jury believed from the evidence that the defendant owed the payee of the check the amount thereof, which he had promised to pay him on the day the check was given, and if the jury believed that the defendant had falsely represented to the payee of the check that he had gotten the money with which to pay such payee, and had deposited the same in the bank on which the check was drawn, and that the defendant then gave to the payee the check described in the indictment, knowing at the time that his representation of having made a deposit in said bank was false, and that when he made and delivered the check he knew he had not funds in said bank, or credit with said bank, for the payment thereof on presentation, and if the jury believed from the evidence that the defendant gave the payee the check with intent to defraud, and the payee received it in good faith, and acted upon it to his injury, then the jury would be authorized to convict the defendant, was erroneous, (1) because it was an inaccurate statement of the law, in that the false representation by the defendant made to the payee of such check given for a pre-existing debt, that the drawer had gotten the money with which to pay such pre-

existing debt, and had deposited the same in bank on which such check was drawn, was not proof of an intent on the part of the defendant to defraud the payee, when such false representation was not then made for the purpose of obtaining from the payee of the check any money or other thing of value; and (2) because the receipt of such check by the payee in good faith, and to his injury, does not constitute an element of the crime for which the defendant was tried, and there was no evidence on which to base that portion of the charge that the payee was injured by the giving of said check.

3. A new trial is granted in this case, because the verdict is not supported by the evidence.

No. 2893. MARCH 18, 1922.

Indictment for passing worthless check. Before Judge Worrill. Seminole superior court. October 26, 1921.

W. M. Berry was indicted for giving a worthless check, and was convicted. He moved for a new trial, which was refused; and this is the error assigned.

On September 19, 1921, P. L. Watts loaned W. M. Berry forty-eight dollars to pay in part a fine imposed upon him at Crawford-ville, Fla. Berry came back to Brinson, Georgia. On September 20, 1921, Watts went to Iron City, Seminole County, Georgia, and asked Berry to pay him. Berry said that he and his father would go out in the country and get the money. Upon the evening of that day Watts went back to Iron City, saw Berry, and asked him to pay back the $48 which he had paid for Berry in Florida. Berry said that he had gotten the money for Watts, had it in the bank, and would bring it to him the next morning. Watts said to Berry, " If you have the money in the bank, just give me a check for the money, and it will save you the trip to my house." Berry said, " All right." Watts wrote the check, and Berry signed it. Watts testified that he believed that Berry had the money in the bank as he said he had, and so accepted the check. Watts took the check back to Brinson, Georgia, and deposited it in bank; and it came back unpaid. Watts then gave it to his agent, J. C. Robinson, for collection. Robinson went to Iron City to see Berry to collect the amount of this check. Berry did not pay it. Robinson presented the check to the Seminole Bank at Iron City for payment, which was refused by the bank. At the time Berry gave his check he had no account with the Seminole Bank, and had never had such account. He had made no arrangement of any sort with the bank to pay this check before it was presented, and had arranged for no

credit with that bank. He asked the cashier to let him know when the check came in, as he had given it, and wanted to protect it. When the check came the cashier of the bank notified him; but Berry did nothing about it, and the bank sent the check back. The cashier notified him that this check had come sometime between two and four o'clock, and returned it after 4 o'clock. This check was as follows:

"SEMINOLE BANK. Iron City, Georgia, 9/20/21.

" Pay to the order of P. L. Watts forty-eight and no/100 dollars $48.00. [Signed] W. M. Berry."

This check bore the indorsement of Watts, various banks, and an indorsement " No account, Seminole Bank."

The defendant introduced no evidence, but he stated that Watts loaned him $48 to pay a fine at Crawfordville, Florida, and that he told Watts that he and his father would get up the money and pay him when they got back to Iron City. The following day Watts came to Iron City, and he told him that they had arranged to get the money, when Watts told him, if that was the case, to give him a check, and they could put the money in the bank and the check would be paid. He had never had any money in the Seminole Bank since it was organized.

*J. E. Drake* and *W. V. Custer,* for plaintiff in error.

*B. T. Castellow, solicitor-general, R. R. Arnold,* and *E. C. Hill,* contra.

HINES, J. (After stating the foregoing facts.)

1. It is urged by counsel for the defendant that section 34 of the act of August 16, 1919 (Ga. Laws 1919, pp. 135, 220) is in conflict with article 3, sec. 7, par. 17, of the constitution of this State, which provision is fully set out in the first headnote, because this act amends or repeals the act of August 14, 1914 (Ga. Laws, p. 86), which makes " it a misdemeanor to draw and utter any check, draft, or order when the drawer has not at the time sufficient funds to meet the same, provided such drawer does not deposit with the drawee sufficient funds to meet the same within thirty days." The act of 1919 does not refer to the act of 1914. The act of 1919 is a general law, regulating banking in this State, creating the Department of Banking, providing for the incorporation of such banks, the amendment, renewal, and surrender of their charters, and providing penalties for the violation of laws with reference to

banking and the banking business. It is unnecessary for us to determine whether the act of 1919 amends or repeals the act of 1914; but assuming that it does either, it does not collide with the above constitutional principle. If one thing is settled by the decisions of this court, it is that this provision of our State constitution refers alone to express amendments or repeals of sections of the code or of statutes, and has no reference whatever to implied amendments or repeals of either. *Peed* v. *McCrary*, 94 *Ga.* 488 (21 S. E. 232); *Swift* v. *Van Dyke*, 98 *Ga.* 725 (26 S. E. 59); *Edalgo* v. *So. Ry. Co.*, 129 *Ga.* 266 (58 S. E. 846); *Nolan* v. *Central Ga. Power Co.*, 134 *Ga.* 201 (3), 207 (67 S. E. 656); *Silver* v. *State*, 147 *Ga.* 162 (93 S. E. 145). At this late day the above ruling ought to command the universal recognition of the bar of this State.

2. Errors are assigned upon the instruction of the court to the jury, of which the substance is set forth in the second headnote of this opinion. The alleged errors are: (*a*) That this charge is contrary to law, contrary to the evidence, and that there is no evidence that the payee of the check had been injured by the receipt thereof, the evidence showing that the check was given for a pre-existing debt. We think that the reference in this instruction to the alleged false representation of the drawer that he had gotten up the money and deposited it in the bank, on which the check was drawn to meet the same, was inaccurate under the facts of this case. Such false representation did not tend to establish the intent of the defendant to defraud the payee, as will be more fully dealt with in the next division of this opinion. The reference in this charge to the fact that the payee had acted to his injury in receiving the same is without evidence to support it. Under certain circumstances this instruction would be accurate; but under the facts of this case it was harmful to the defendant.

3. It is contended by counsel for the defendant that the verdict is without evidence to support it. This raises the question of the proper construction of section 34 of this act of 1919. This section is as follows: "Any person who, with intent to defraud, shall make, or draw, or utter, or deliver any check, draft, or order for payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivery that the maker or drawer has not sufficient funds in or credit with such

bank, or other depository, for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor. The making, drawing, uttering, or the delivering of such check, draft, or order as aforesaid, shall be prima facie evidence of intent to defraud. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depository for the payment of such check, draft, or order."

The gravamen of this offense is the "intent to defraud." The means of effecting this intent to defraud is by making, drawing, uttering, or delivering any check, draft, or order for the payment of money upon any bank, or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in, or credit with, such bank, or other depository, for the payment of such check, draft, or order in full upon its presentation. The making, drawing, uttering, or delivering of such check, draft, or order is prima facie evidence of intent to defraud. The word " credit " as used in this act means an arrangement or understanding with the bank or depository for the payment of such check, draft, or order. Under this act the State can always prove a case by showing the following facts: (1) The making, drawing, uttering, or delivering any check, draft, or order for the payment of money upon any bank or other depository; and (2) knowledge on the part of the defendant, at the time of the making, drawing, uttering, or delivering of either of said instruments, that the maker or drawer did not have sufficient funds in, or credit with, such bank or other depository for the payment of such instrument in full upon its presentation. Upon proof of' the above facts the presumption arises that the making, drawing, uttering, or delivering of either of such instruments was done within intent to defraud. The burden would then be upon the defendant to establish that such instrument was not made, drawn, uttered, or delivered with intent to defraud. This presumption is a rebuttable one. The defendant would be relieved of this burden if it should appear from the evidence introduced by the State that he was not actuated by an intent to defraud in making, drawing, uttering, or delivering any one of such instruments. The presumption in this case is similar to the presumption of malice in homicide cases, in which it has been held that the presumption

may be negatived by the proof submitted by the State. *Futch* v. *State,* 90 *Ga.* 472 (16 S. E. 102); *Green* v. *State,* 124 *Ga.* 343 (52 S. E. 431); *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R A. (N. S.) 934). In this case, if the evidence introduced by the State negatives the presumption of an intent to defraud on the part of the defendant, he should not have been convicted.

Does the giving of a check in payment of an antecedent debt due by the maker to the payee, with a false statement by the maker that he had the money in the bank to meet the same, when by this statement the maker did not deprive the payee of any right, did not procure anything of value from the payee by making such statement, and did not appropriate anything belonging to the payee wrongfully, constitute an offense under this statute? What does the language " with intent to defraud " mean? The payee need not be actually defrauded. The intention to defraud is sufficient. Webster defines the word " defraud " as follows: " To deprive of some right, interest, or property by a deceitful device; to cheat; to overreach." The Encyclopedia Dictionary defines the term as meaning " to deprive of a right, by withholding from another, by indirection or device, that which he has a right to claim or obtain." The meaning of this term is largely influenced by the sense in which it is used, or by the subject to which it relates. It has been defined as meaning to cheat, as to defraud a creditor, to defeat or frustrate wrongfully, to deprive another of a right, either by obtaining something by deception or artifice, by appropriating something wrongfully, or by taking something wrongfully without the knowledge or consent of the owner, to deprive or withhold from another that which justly belongs to or is due him, to deprive of something dishonestly, to injure by embezzlement, to overreach, and to rob. 18 C. J. 468. In construing statutes we must generally give to words their ordinary signification. Civil Code, § 4, par. 1.

By giving this check the defendant did not obtain from the payee any money, property, or other thing of value. He did not deprive the payee of any right. Bank checks are not payment until themselves paid. Civil Code, § 4314. The acceptance of this check by the payee did not amount to a novation of the original contract. The purpose of the defendant in giving this check was not to deprive the payee of any right, money, property, or other

thing of value, and he did not intend to defraud the payee in giving the same. His evident purpose was to escape the importunate duns of his creditor and to get a temporary respite therefrom.

Where a defendant was prosecuted for procuring credit by giving a mortgage, representing at the time that the mortgaged property was unincumbered, which representation was false, this court held that he could not be convicted, unless it was shown that, in consequence of such misrepresentation, the mortgagee had been in fact defrauded, and that in extending the credit upon the faith of such misrepresentation he had sustained loss. *McGee* v. *State,* 97 *Ga.* 199 (22 S. E. 589); *Berry* v. *State,* 97 *Ga.* 202 (23 S. E. 833); *Rucker* v. *State,* 114 *Ga.* 13 (39 S. E. 902). The giving of a check on a bank in payment of merchandise, without any representation by the drawer that he had funds in the bank upon which the check was drawn, or that the check would be paid by the bank on presentation, the drawer knowing he had no funds in the bank, did not of itself constitute the offense of cheating and swindling under our law, prior to the act of 1914. *Williams* v. *State,* 10 *Ga. App.* 395 (73 S. E. 424); *Ganey* v. *State,* 10 *Ga. App.* 777 (74 S. E. 286). Under the law prior to the act of 1914 there must have been pecuniary loss. *Busby* v. *State,* 120 *Ga.* 858 (48 S. E. 314); *Hay* v. *State,* 7 *Ga. App.* 407 (66 S. E. 984); *Foster* v. *State,* 8 *Ga. App.* 119 (68 S. E. 739); *Jacobs* v. *State,* 4 *Ga. App.* 510 (61 S. E. 924); *Goddard* v. *State,* 2 *Ga. App.* 154 (58 S. E. 304).

Then came the act of 1914, which makes it a misdemeanor for any person to draw and utter any check, draft, or order for a present consideration upon a bank, person, firm, or corporation, with which said drawer has not at the time sufficient funds to meet such check, draft, or order, and thereby obtain from another money, or other thing of value, or induce such person to postpone any remedy he may have against such drawer, unless such drawer deposit with the drawee, within thirty days after giving such instrument, funds sufficient to meet the same, together with accrued interest. Under this act the Court of Appeals held that a defendant could not be prosecuted for giving a postdated check, although given for a present consideration. *Neidlinger* v. *State,* 17 *Ga. App.* 811 (88 S. E. 687). Then the legislature passed the act of 1919, the 34th section of which is set out above. This section is much broader than the act of 1914. It makes it unlawful for any

person, with intent to defraud, to make, draw, utter, or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time that the maker has not sufficient funds in, or credit with, such bank or other depository, for the payment of such instrument; and constitutes the making, drawing, uttering or delivering of such instrument prima facie evidence of intent to defraud. This act still makes the intent to defraud an essential element of the crime defined in this section thereof. Without such intent no crime is committed; and where the evidence introduced by the State negatives the presumption created by this section, there can be no conviction.

The Court of Appeals has held that the act of 1919 does not cover a postdated check, accepted by the payee with knowledge that the paper constitutes nothing more than a promise that the drawer will have in the bank the funds necessary to meet it. *Strickland* v. *State*, 27 *Ga. App.* 772 (110 S. E. 39).

The evidence for the State disclosing that there was no intent to defraud the payee of any right, property, money, or other thing of value, the defendant should not have been convicted, although he falsely stated before he gave his check that he had put funds in the bank to meet the same. The court erred in not granting a new trial.

*Judgment reversed. All the Justices concur; except Fish, C. J., absent because of sickness.*