## STATE OF NORTH DAKOTA, Appellant, v. W. C. STRONG, Respondent.

(201 N. W. 858.)

**Criminal law — granting new trial for vagueness and uncertainty of evidence held not abuse of discretion.**

1. For reasons stated in the opinion, it is held, that the trial court did not abuse its discretion in ordering a new trial upon the ground that the evidence showing defendant's guilt was vague and uncertain.

**Chattel mortgages — holder of subsequent lien on personal property takes it subject to rights of prior mortgagees; in absence of fraud, mortgagor and first mortgagee may agree to sell mortgaged property subject to more than one mortgage or lien without foreclosure and apply proceeds**

Note.—Sale of mortgaged chattels by, or with the consent of mortgagor, and application of proceeds to payment of mortgage, as a foreclosure cutting off intervening liens, see annotation in 45 L.R.A.(N.S.) 1137.

**on indebtedness; failure to get consent of junior lienholders to removal from county of mortgaged property agreed upon with first mortgagee for purposes of sale held not to render mortgagor guilty of crime.**

2. The holder of a second and subsequent lien upon personal property takes the same subject to all the rights of prior mortgagees, and with all the incidents of a lien prior in law. The mortgagor and the first mortgagee may fairly and in good faith agree that the property be sold on the regular market without foreclosure and the proceeds applied on the indebtedness; and subsequent lien holders have no ground for complaint, in the absence of fraud, or misconduct amounting to legal fraud, which results in prejudice to their rights. If, in order to accomplish such lawful purpose, it becomes necessary to remove the property, in good faith, from the county, failure to wait upon mortgagees or lien holders, subsequent to the first mortgage, in order to obtain their consent thereto, would not render the mortgagor guilty of a crime within the letter or the spirit of the statute.

Opinion filed December 31, 1924.

Chattel Mortgages, 11 C. J. § 339 p. 625 n. 45; § 362 p. 641 n. 67; § 389 p. 647 n. 21. Criminal Law, 16 C. J. § 2707 p. 1179 n. 67.

An appeal from an order of *Coffey,* Presiding Judge of the District Court of Foster County, North Dakota, granting to the defendant a new trial.

Affirmed.

*James Morris,* for appellant.

*C. B. Craven,* for respondent.

"It is not the policy of the law, that the state should be put to the expense of a prosecution or become a means of enabling a mortgage, who might be actuated by some revengeful motive, to prosecute a case under this statute here a technical violation only has been established, and where the mortgagee has not been wronged or injured in his mortgage security." State v. Butcher, 104 Neb. 380, 177 N. W. 184; State v. Bronkol, 67 N. W. 680; Rhoads v. First Nat. Bank, 163 N. W. 1046.

" 'In fact the gravamen of the offense consists of the evil design with which the misapplication is made, and a count which should omit the word, wilfully, and, with intent to defraud, would be clearly bad.' " Evans v. United States, 153 U. S. 584, 38 L. ed. 830, 14 Sup. Ct. Rep. 934.

When the defendant has shown that his conduct in the matter has been for the lawful and legitimate purpose of satisfying a prior lien upon the property which it is claimed has been wrongfully disposed of; that he has acted in good faith and has in nowise profited by the transaction, then the burden is upon the State to show and to prove beyond a reasonable doubt, that the defendant acted with a wrongful and fraudulent intent and with the purpose to defraud the persons holding the mortgage upon which the prosecution is based, and if the State fails so to do, then the Defendant is entitled to an acquittal of the charge against him.     11 C. J. 642, § 367, cases cited, note 91; Neal v. State, 168 Pac. 247; Watson v. State, 11 Okla. Crim. Rep. 542, 149 Pac. 926; State v. Butcher (Neb.) 177 N. W. 184; Rhoads v. First Nat. Bank (N. D.) 163 N. W. 1046.

The discretion confided in the Trial court is perhaps the greatest protection of the accused, against the mistakes and prejudices of the jury and as the consequences in refusing a new trial are serious and not fully corrected by reversal, the Trial Courts have been admonished to be more liberal in granting new trials in criminal cases.     So where there is a doubt as to the duty to grant a new trial, it should be resolved in favor of the defendant.     16 C. J. 1119 and cases cited, notes 34 to 40 inclusive; State v. Weber (N. D.) 191 N. W. 610.


JOHNSON, J.  The defendant was prosecuted on the charge of unlawfully removing personal property from Foster County, on which there was, at the time he removed the same, a subsisting chattel mortgage, to one Koenig as mortgagee.  He was found guilty and on motion an order was made granting a new trial.  From this order the State appeals.

Defendant was charged with unlawfully removing two horses and some cows.  Section 10,248, Comp. Laws 1913, reads as follows:

"Every person having in his possession, or under his control, any personal property upon which there is known to him to be a subsisting lien, either by operation of law or by contract, who willfully destroys, removes from the county, conceals, sells or in any manner disposes of, otherwise than as prescribed by law, or materially injures such property or any part thereof, without the written consent of the then holder of such lien, is guilty of:

"1. A misdemeanor, if the value of the property does not exceed one hundred dollars; or,

"2. A felony, if the value of the property exceeds such sum."

The trial court granted the motion for a new trial, according to the memorandum decision of the trial judge, on the ground that the evidence in support of the charge was "very uncertain and indefinite" as to the material facts regarding the removal of the horses. The court says that the testimony fails to show that the horses were moved by defendant, wilfully or otherwise, from Foster county; that the State wholly failed to account for the horses, alleged to have been removed, except by inferences to be drawn from the fact that they were not available when possession was sought by the mortgagee; and the court concludes, in view of the positive testimony of the defendant and of one of his witnesses to the effect that one of the horses died and the other strayed and has never been recovered, that the testimony is so indefinite and uncertain that the verdict of guilty should not stand and a new trial should be ordered. As to the cows alleged to have been removed by the defendant and included in the chattel mortgage, the testimony shows without dispute, in the view of the trial court, as disclosed in the memorandum decision, that the cows were shipped to St. Paul, sold on that market, and the proceeds delivered to the Security State Bank of Kensal, in Stutsman county; that this bank had a first lien upon the cows, and that the proceeds were wholly inadequate to satisfy the first lien. The court concludes, with respect to the cows, that the proof on the part of the State is so shadowy and indefinite that the verdict of conviction of wilful removal of property should be set aside and a new trial ordered. The trial court was of the opinion, as a matter of law, that the defendant, altho he removed the cows without the consent of the second mortgagee and sold the same, delivering all the proceeds to the first lien holder, was not guilty of the crime defined in the statute.

"In criminal, as in civil, cases, the grant or refusal of a new trial is generally said to rest in the sound discretion of the trial court, and the appellate court has no right to review the exercise of such discretion unless it appears that it has been abused to the prejudice of defendant. . . . The discretion confided in the trial court is perhaps the greatest protection of accused against the mistake and prejudice of the jury, and as the consequences of refusing a new trial are

serious and not fully corrected by a reversal, the trial courts have been admonished to be more liberal in granting new trials in criminal cases. So where there is a doubt as to the duty to grant a new trial it should be resolved in favor of defendant." 16 C. J. 1119, 1120.   See State v. Robidou, 20 N. D. 518, 128 N. W. 1124, Ann. Cas. 1921D, 1015; State v. Albertson, 20 N. D. 512, 128 N. W. 1122; State v. McGrath, 46 S. D. 465, 193 N. W. 601; People v. Lepkojes, 48 Cal. App. 654, 192 Pac. 160.

"A motion for a new trial on the ground that the verdict is contrary to the evidence is an appeal from the jury to the court on a question of law, and hence to set aside a verdict unsupported by evidence is not an invasion of the province of the jury.   This ground is well recognized, and when it is urged the trial court is imperatively required to weigh the evidence and to exercise a salutary supervision over the . verdict.   Greater latitude is allowed on motions for new trials on the ground of insufficiency of evidence in criminal than in civil cases.' State v. Howser, 12 N. D. 495, 98 N. W. 352; State v. Christman, 32 N. D. 105, 115, 155 N. W. 26; Berry v. State, 153 Ga. 169, 35 A.L.R 370, 111 S. E. 669; State v. Sullivan, 34 Idaho, 68, 17 A.L.R. 902, 199 Pac. 647; Hallmark v. State, — Okla. Crim. Rep. —, 212 Pac 322.   The trial court, on a review of the whole evidence, was not satisfied that the facts proved justified the verdict found; in such a case the appellate court will not ordinarily interfere with the action of the trial court granting a new trial.   State v. Cray, 31 N. D. 67, 153 N. W. 425; 16 C. J. 1179.

We have examined the record and read the evidence and we see no reason for reversing the order of the trial court and reinstating the verdict.   The evidence is vague and generally unsatisfactory, in the particulars stated in the memorandum decision, to which sufficient reference has already been made.

In Rhoads v. First Nat. Bank, 37 N. D. 421, 163 N. W. 1046, the majority of this court held that, under § 10,248, supra, a crime has not been committed unless it be made to appear by evidence, beyond a reasonable doubt, that the defendant removed the property from the county "with a bad purpose or evil intent;" that is, it was there held that the word "wilfully," as used in this statute, meant more than intentionally, but that, inasmuch as it was used in a penal statute, it

must be held to require the presence of an evil purpose. See also State v. Bronkol, 5 N. D. 507, 76 N. W. 680; State v. Butcher, 104 Neb. 380, 177 N. W. 184.

The record is devoid of direct evidence tending to show "willful" removal of the property within the sense of the statute. If it can be said that there is any circumstantial evidence on which a conviction could stand, it is so flimsy that the trial court very properly ordered a new trial. The state's evidence, in refutations of the defendant's story that one of the horses died and the other strayed, consists largely of hazy surmise and conjecture on the part of the complaining witness and his brother. The removal of the cows is explained by facts and circumstances at least as consistent with innocence as with guilty intent—the existence of a prior lien, held by a bank in Stutsman County, the sale of the cows and the delivery of all the proceeds to the first mortgagee in partial satisfaction of its lien.

The evidence in this case, without dispute, shows that the cows were covered by a first mortgage; that they were sold on a regular market and the proceeds delivered to the first mortgagee and by it applied on the indebtedness secured by the mortgage; and that the value of the property sold was not sufficient to extinguish the lien of the first mortgage. We have no hesitancy in holding that the removal of the property covered by the first mortgage, and the sale of the same for the benefit of the first mortgagee, under the circumstances stated, is not a crime within the provisions of § 10,248, supra. The manifest purpose of that statute was to protect lien holders against fraud, either in the removal or destruction of the property, or the sale of the same, without their consent. The holder of a second and subsequent lien upon personal property takes the same subject to all the rights of prior mortgagees, and with all the incidents of a lien junior in law. The mortgagor and the first mortgagee may fairly and in good faith agree that the property be sold on the regular market without foreclosure and the proceeds applied on the indebtedness; and subsequent lien holders have no ground for complaint, in the absence of fraud, or misconduct amounting to legal fraud, which results in prejudice to their rights. If, in order to accomplish such lawful purpose, it becomes necessary to remove the property, in good faith, from the county, failure to wait upon mortgagees or lien holders, subsequent to the first mortgage, in

order to obtain their consent thereto, would not render the mortgagor guilty of a crime within the letter or the spirit of the statute.

It is well known that a private sale of chattels, made in good faith and on the open market, is likely to bring more than a forced sale; that, in such circumstances, lien holders subsequent to the first mortgage cannot complain, when, notwithstanding the more advantageous sale, the proceeds are inadequate to extinguish the lien of the first mortgage, is as good sense as it is sound law. Any other construction would result in anomalous situations, and in some instances greatly impede, perhaps wholly defeat, the legitimate and good faith efforts of mortgagors and of first mortgagees to realize on the security in a manner calculated to bring the largest returns from a sale thereof.

In Watson v. State, 11 Okl. Crim. Rep. 542, 149 Pac. 926, the court, in discussing the purpose and effect of a statute very similar to § 10,248, supra, say:

"We are inclined to the view that it must have been the purpose of the Legislature to provide a statute which would give the mortgagee adequate and ample protection against fraud, annoyance, and unnecessary expense, and that therefore the intention of this act was to penalize any mortgagor who removed his property from one county to another, . . . and who by such removal either defrauded the mortgagee or intended to defraud him. In our judgment, the purpose of this law is accomplished when it is given this construction. Under this view, any mortgagor who removes mortgaged property, as prohibited, with the intent to defraud the mortgagee, would be guilty of a violation of the statute; or, if such mortgagor voluntarily removes such property and by reason of such removal fraud is actually perpetrated on the mortgagee, whether such fraud was conceived before the removal occurred or afterward, or whether such fraud was intended or not, such an act would be punishable as provided. It can hardly be said that a person should be sent to the penitentiary, deprived of his citizenship, and branded as a felon for the remainder of his life, who has done no act which injured any one and has done no act which was intended to injure any one."

In Neal v. State, 14 Okla. Crim. Rep. 121, 168 Pac. 247, the court. say:

"Following to its natural conclusion, the argument that the written

consent of the second mortgagee had to be secured before a sale could be made, the rights of the first mortgagee would be destroyed. Such is not the law. The second mortgagee had rights only after the first mortgagee had been paid in full and not until then. So if the cotton was sold at a fair market price and the proceeds fully accounted for by the application upon the note due to the said first mortgagee, then no crime was committed."

The order of the trial court is affirmed.

BRONSON, Ch. J., and NUESSLE, CHRISTIANSON, and BIRDZELL, JJ., concur.