[Criminal No. 637.  Filed July 15, 1926.]

[247 Pac. 1099.]

STATE, Appellant, v. FRED L. MEEKS, Respondent.

1. FALSE PRETENSES.—Offense under Laws of 1921, chapter 121, of giving, "with intent to defraud," check, knowing that there are insufficient funds in the bank to meet it, may be committed though check is given for past-due debt.

2. STATUTES.—Laws of 1921, chapter 121, being adopted from another state, is adopted with its prior construction by the courts of that state.

3. CONSTITUTIONAL LAW—FALSE PRETENSES—IMPRISONMENT FOR GIVING WORTHLESS CHECK WITH INTENT TO DEFRAUD IS NOT IMPRISONMENT FOR DEBT (LAWS 1921, CHAP. 121; CONST., ART. 2, § 18).—Laws of 1921, chapter 121, providing imprisonment for offense of giving check with intent to defraud, knowing there are insufficient funds in bank to meet it, does not contravene Constitution, article 2, section 18, inhibiting imprisonment for debt except in case of fraud.

See (1) 7 C. J., p. 675, n. 6, 7.   (2) 36 Cyc., p. 1154, n. 81.   (3) 7 C. J., p. 675, n. 9 New.

APPEAL from a judgment of the Superior Court of the County of Maricopa.  M. T. Phelps, Judge. Reversed.

Mr. Arthur T. La Prade, County Attorney, for the State.

Mr. Herman Lewkowitz, Mr. Harold J. Janson and Mr. Thos. J. Croaff, for Respondent.

McALISTER, C. J.—On the fourth day of August, 1925, the county attorney of Maricopa county filed an information against Fred L. Meeks charging in proper form that on the third day of December, 1924, he, with the intent to defraud, feloniously drew, uttered and delivered to Jim Pendergast, in payment of a debt due the latter since the fifteenth day of Oc-

tober, 1924, a check on the Citizens' State Bank of Phoenix for $17.30, knowing at the time that he did not have sufficient funds in or credit with the bank to meet the check when it should be presented for payment.

To this information the defendant demurred upon several grounds, the fourth one being in the following language:

"That it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, and would legally bar the prosecution, for the reason that said information upon its face states that the alleged check was given in payment, or attempted payment, of a past-due obligation."

The demurrer was sustained, and, we take it, upon this ground, whereupon the state, pursuant to the provisions of subdivision 2, section 1155, Penal Code of 1913, appealed. It assigns no error other than the order sustaining the demurrer.

The information is based upon chapter 121, Session Laws of Arizona of 1921, which reads as follows:

"Every person who for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, makes or draws or utters or delivers to another person any check or draft on a bank, banker or depositary for the payment of money, knowing at the time of such making, drawing, uttering, or delivery, that he or his principal or the corporation of which he is an officer has not sufficient funds in, or credit with such bank, banker or depositary, to meet such check or draft in full upon its presentation, is punishable by imprisonment in the county jail for not more than one (1) year or in the state prison for not more than fourteen (14) years. The word 'credit' as used herein shall be construed to be an arrangement or understanding with the bank or depositary for the payment of such check or draft."

In ruling upon the demurrer the court evidently took the view that an information under this statute which shows upon its face that the check was given in payment of a past-due obligation, and without any new consideration, charges no offense. Whether it considered the crime created thereby the same virtually as that of obtaining goods under false pretenses does not appear. However, appellant argues that it did, and, if this be true, it is apparent that it overlooked the fact that there is a fundamental distinction between the two crimes. While the courts generally hold that one who obtains property upon a credit agreement and later gives a bogus check in payment is not guilty of the crime of obtaining property by false pretenses because nothing in exchange for the check is obtained, the offense defined in chapter 121 is a new and distinct one, and to be guilty of it it is not necessary that one obtain money or property at the time of passing the check. In discussing the difference between the crimes of obtaining goods by false pretenses and that defined in a statute very similar to chapter 121, the Supreme Court of Ohio, in *State* v. *Lowenstein,* 109 Ohio St. 393, 35 A. L. R. 361, 142 N. E. 897, used the following language:

"The crime of uttering a check to defraud is not the crime of false pretense; it is a new and distinct crime. It was created by the statute to meet a situation different from that covered by the law against obtaining under false pretenses.

"It was the evident purpose of this statute to prevent the negotiation of false checks drawn on accounts which did not exist, or were insufficient to pay the checks drawn. It was meant, for example, to protect hotel keepers from receiving 'cold checks' in payment of obligations incurred for lodging, many of which are past due. It was enacted to protect business men all over the state, to protect commercial life; about 90 per cent. of the commercial work of the

world being done on credit. In order to protect the credit intercourse of the community this statute was enacted creating a new crime and providing new and distinct rules of evidence.''

The gist of the offense of giving a check, knowing there are not sufficient funds in the bank to meet it, is the intent to defraud, and the respondent, who has made no appearance here, doubtless contended in his argument in support of the demurrer that such an intent could not exist within the meaning of the statute unless it also appeared that it was probable that the person to whom the check was delivered could be defrauded, and that, where the information alleged that the check was given for a past-due indebtedness and the person to whom it was given parted with no new consideration therefor, there is no way by which he could be damaged, the debt itself not being extinguished thereby nor its enforceability in any way affected. Such in effect was the holding of the court in *Berry* v. *State,* 153 Ga. 169, 35 A. L. R. 370, 111 S. E. 669. But it is strenuously contended by the state that an intent to defraud may exist whether a fraud on the payee is actually accomplished or not, and that the offense is complete when it is shown that the defendant gave the check, representing thereby that it was good and valid and would pay the indebtedness, knowing at the time that he had no funds to meet it, and therefore that it was absolutely worthless. This view, which we think correct, finds support in *People* v. *Khan,* 41 Cal. App. 393, 182 Pac. 803, in which the appellate court of that state used the following language in upholding a conviction for a violation of a statute of which chapter 121 is a *verbatim* copy, the check having been given in payment of a past-due debt:

''Under the first contention appellant insists that, in order for an intent to defraud to exist within the meaning of the section, the probability must appear

that damage may result to the person to whom the check is delivered, and that where such check is given for a debt past due and the recipient parts with no new consideration, it is impossible that he may be damaged. We do not think that the words of the section as requiring that an intent to defraud shall exist should be so narrowly construed; we do not think that it is necessary that it be shown, in order to establish such intent, that the recipient of the check, as the result of the passing thereof, may be actually defrauded. To our minds, the fraudulent intent here was shown when it was made to appear that the appellant gave the check, representing thereby that it was good and valid, and that it was given and received with the intent that it should pay appellant's debt. It seems to us immaterial as to whether the acceptance of the worthless check actually had the effect of extinguishing the debt.''

If it were required that the payee of the check be actually defrauded before it can be said the intent to defraud sufficiently appears, it would not be necessary that he suffer a money damage but merely that a deception be practiced upon him in some way by the one passing the check for the purpose of giving the latter an unlawful or unfair advantage. An intent to defraud means an intent to commit a fraud, and a fraud, according to Webster, is a "deception deliberately practiced with a view to gaining an unlawful or unfair advantage." And "financial damage," said the court in *State* v. *Lowenstein,* 109 Ohio St. 393, 35 A. L. R. 361, 142 N. E. 897, "is not necessary to the existence of fraud. In the case of *United States* v. *Plyler,* 222 U. S. 15, 56 L. Ed. 70, 32 Sup. Ct. Rep. 6 (see, also, Rose's U. S. Notes), a forgery case which involved a discussion of the elements of fraud, the Supreme Court of the United States says: 'It now must be regarded as established that "it is not essential to charge or prove an actual financial or property loss to make a case under the statute." ' ''

See *People* v. *Williams,* 69 Cal. App. 169, 230 Pac. 667. One who gives a check in payment of a past-due debt, knowing he has not the funds or credit with which to meet it, has a reason for doing it. Evidently he intends to gain some advantage; either to lead the payee to think the debt is paid and stop him from pressing for payment, or to delay the institution of an action to collect it. And the latter, it was held in *People* v. *Williams, supra,* would, if actual fraud were a necessary ingredient of the crime, constitute sufficient detriment to the payee to establish the intent to commit it provided for in chapter 121.

This chapter was enacted by the Arizona legislature in 1921, and is a *verbatim* copy of paragraph 476a of the Penal Code of California. It had existed there in exact form since 1919, and from 1907 until that time in substantially the same form. In 1919, the appellate court of that state construed it in accordance with the foregoing view in *State* v. *Khan, supra,* and in 1924 reaffirmed this holding in *People* v. *Williams, supra.* The rule, therefore, so often announced by this court, that when this state adopts a statute of another state it adopts the construction theretofore placed upon it by the courts of that state, is applicable here, and leads to a holding that one who gives a check with intent to defraud, knowing at the time he has no funds in or credit with the bank to meet it when presented, may be guilty of an offense.

Another ground of demurrer was that the information shows upon its face an attempt to charge acts constituting an offense, the punishment for which would be in violation of article 2, section 18, Constitution of Arizona, which provides that "there shall be no imprisonment for debt, except in cases of fraud." Because one who gives a check with the intent to defraud, knowing he has no funds to meet it when presented, may be punished, does not mean that he

may be imprisoned for debt, but rather for committing an offense based upon fraud. Such was the holding in *State* v. *Avery,* 111 Kan. 588, 23 A. L. R. 453, 207 Pac. 838; *Hollis* v. *State,* 152 Ga. 182, 108 S. E. 783; *State* v. *Pilling,* 53 Wash. 464, 132 Am. St. Rep. 1080, 102 Pac. 230.

The order of the court sustaining the demurrer is reversed and the case remanded, with directions to the superior court to overrule it.

ROSS and LOCKWOOD, JJ., concur.