Conway Ellis **CLARKE**, Appellant,

v.

**UNITED STATES,** Appellee.

Nos. 2094, 2095.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 20, 1958.

Decided April 7, 1958.

Joseph V. Gartlan, Jr., Washington, D. C., for appellant.

Louis M. Kaplan, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., Lewis Carroll and Walter J. Bonner, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged in two informations with two violations of Code 1951, § 22–1410, the "worthless" check statute.[1] A

---

1. Bates v. Bates, 79 U.S.App.D.C. 14, 141 F.2d 723; Lachowicz v. Lachowicz, 60 App.D.C. 373, 55 F.2d 535.

1. "Any person within the District of Columbia who, with intent to defraud, shall make, draw, utter, or deliver any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering, or delivering that the maker or drawer has not sufficient funds in or credit with such bank or other depository for the payment of such check, draft, or order in full upon its presentation, shall be guilty of a misdemeanor and punishable by imprisonment for not more than one year, or be fined not more than $1,000, or both. As against the maker or drawer thereof the making,

jury convicted him of each offense, and this appeal followed.

The evidence on behalf of the government disclosed that in November 1956 appellant offered to purchase a grocery business owned by the complaining witness. An agreement was reached between the parties regarding the sale, subject to the approval of the health authorities. At that time the cash register in the grocery store contained $50. The complainant agreed to allow the money to remain there pending the action of the health authorities, but no agreement was made as to its ownership. The necessary approval of the authorities was obtained, and appellant became the owner of the store. Subsequently, the complainant met appellant in the store and stated that appellant could either keep the $50 and give him a check for it, or that he would simply "take out" the money in cash. Appellant gave him a check which was later dishonored.

There was also evidence that while appellant was operating the store, he incurred a milk bill of $40.50. He requested the complainant in a telephone conversation to pay the bill, stating that he would reimburse him. Later the same day appellant gave the complainant a check for $40.50, which was the amount that the complainant had paid to the dairy pursuant to appellant's request. This check, too, was returned for insufficient funds.

Appellant stipulated that the checks were issued and dishonored, but offered no evidence in his own behalf. His sole defense, which was raised by a motion for a directed verdict, and the only assignment of error here, is that an essential element of the offense, fraudulent intent, was not proved. His position is that the presumption of fraudulent intent created by the statute, when utterance and dishonor of the checks are shown, was overcome by the government's own evidence indicating that the checks were given in payment of an antecedent debt.

Whether the checks were in fact given for pre-existing debts is not entirely clear. With regard to the first check the record does not conclusively show that the money was left in the cash register merely for safekeeping, as a loan in order to keep the business operating, or for what reason. If it was left there only for safekeeping, and appellant had no right or claim to it, the subsequent issuance of a check for it would be simply the equivalent of "cashing" a check for present value, and thus not payment of an antecedent debt. The exact nature and circumstances surrounding the second transaction are also not clear, but it does appear that the check was given some time, though probably only a few hours, after the complainant paid the milk bill, and consequently we believe that this check was issued to discharge an antecedent debt.[2] In view of the uncertainties in the record with respect to the first check we would not reach the question raised by appellant in that case, but we think that the conviction involving the second check does fairly pose the problem. In any event the result would be the same, for in our view the fact that a check is issued for a past-due obligation does not preclude a conviction under this statute.

drawing, uttering, or delivering by such maker or drawer of a check, draft, or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in its possession or control, shall be prima facie evidence of the intent to defraud and of knowledge of insufficient funds in or credit with such bank or other depository, provided such maker or drawer shall not have paid the holder thereof the amount due thereon, together with the amount of protest fees, if any, within five days after receiving notice in person, or writing, that such draft or order has not been paid. The word 'credit,' as used herein, shall be construed to mean arrangement or understanding, express or implied, with the bank or other depository for the payment of such check, draft, or order."

2. Cf. State v. Goerdes, 1957, 48 N.J.Super. 293, 137 A.2d 100, 101–102.

■ The precise question raised in the instant case has not heretofore been considered in this jurisdiction, and other courts which have passed on it are in direct conflict. One line of authorities holds that the giving of a check, which is subsequently dishonored, in payment of an antecedent debt is not a violation of the statute because the payee has not been deprived of any right or anything of value, and consequently the presumption of fraudulent intent is conclusively rebutted. The leading case supporting this view is Berry v. State, 1922, 153 Ga. 169, 111 S.E. 669, 35 A.L.R. 370.[3]

On the other hand, the majority of the courts have taken the position that the fact that the check is issued for a pre-existing obligation does not of itself conclusively overcome the presumption of fraudulent intent created by the statute; and in the absence of any other evidence rebutting the presumption, it is no defense at all. Two arguments are advanced for these holdings. First, a person who issues a check for a past-due debt always expects to acquire some advantage thereby, for example, an extension of time, or a respite from the demands of his creditor. Thus he may be said to have obtained some value. Secondly, the evident purpose of "worthless" check statutes is to suppress the negotiation of "bad" checks in the business community. Such a statute, unlike a general false pretenses statute, is directed at a specific act, the issuance of a check with the intent to defraud for which there are no covering funds on deposit, and makes no distinction between a check issued for present value and one for an antecedent debt. To read such a distinction into the statute would to a large extent frustrate its purpose. The

leading case for this position is State v. Lowenstein, 1924, 109 Ohio St. 393, 142 N.E. 897, 35 A.L.R. 361.[4]

It is our conclusion that the majority rule is based on the sounder reasoning and accordingly we adopt it.[5] Thus, in the instant case, the fact that one or both of the checks were given in payment of an antecedent debt did not destroy the presumption of fraudulent intent; and since appellant offered no evidence on the point, a prima facie case was established by the government which the court properly permitted to go to the jury.

Affirmed.

---

3. See also the following annotations: 35 A.L.R. 375, 387–88; 43 A.L.R. 49, 51; 95 A.L.R. 486, 500–01.

4. See, also the annotations referred to in note 3.

5. See, for example, People v. Humphries, 1929, 226 App.Div. 500, 234 N.Y.S. 688,

692; People v. Nibur, 1933, 238 App.Div. 233, 264 N.Y.S. 148, 149; People v. Williams, 1924, 69 Cal.App. 169, 230 P. 667, 668–69; State v. Bradley, 1937, 190 Wash. 538, 69 P.2d 819, 822–23; State v. Meeks, 1926, 30 Ariz. 436, 247 P. 1099; Smith v. State, 1943, 206 Ark. 154, 174 S.W.2d 555, 556.